UNITED STATES of America,
Plaintiff-Appellee,

v.

Larry EDDY and Raymond Daniel Eddy,
Defendants-Appellants.

No. 78–5527.

United States Court of Appeals,
Fifth Circuit.

June 18, 1979.

Jesse W. Shotts, Birmingham, Ala., for defendants-appellants.

J. R. Brooks, U. S. Atty., Frank M. Salter, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and RONEY, Circuit Judges.

SIMPSON, Circuit Judge:

On May 3, 1978, William R. McIntosh, Larry Eddy, and Raymond Daniel Eddy were indicted. They were charged in six counts with unlawfully uttering and publishing as true checks drawn upon the United States Treasury in violation of 18 U.S.C. § 495 (1976). Each count of the indictment alleged that on or about April 3, 1975, the defendants McIntosh, Larry Eddy, and Raymond Daniel Eddy uttered and published as true checks with falsely made and forged endorsements knowing them to be such.

Prior to trial, on June 22, 1978, McIntosh pled guilty to all six counts of the indictment. The charges against the two Eddys proceeded to trial on July 17, 1978. The jury returned guilty verdicts on counts five and six, thereby acquitting the Eddys, appellants herein, of the charges in counts one, three, and four. Count two previously had been dismissed on the government's motion. The trial court sentenced the appellants to concurrent three year confinement terms under counts five and six.

Appellants raise several points[1] on this appeal; however, we pretermit consideration of all but one, finding that the judgment of conviction entered below must be reversed because of insufficient evidence.

I

Appellants contend that the district court erred in denying their motion for judgment of acquittal, pursuant to Fed.R. Crim.P. 29(a), because the government introduced *no evidence* that they participated in any way with the uttering and publishing of any of the instruments charged in the indictment. The government maintains that there was sufficient circumstantial evidence from which the jury could have found that appellants uttered the instruments in counts five and six[2] or aided and abetted another person, McIntosh, in doing so.[3]

---

1. The appeal raises four grounds. Appellants maintain that the district court erred: (1) in denying their motion to dismiss the indictment for a fatal variance with the proof adduced at trial; (2) in admitting into evidence a government exhibit allegedly bearing Raymond Eddy's fingerprints; (3) in admitting into evidence testimony regarding an alleged oral statement made by McIntosh implicating appellants in the crimes for which they were tried and convicted; and (4) in denying their motion for judgment of acquittal. We reverse on the last point asserted.

2. Count Five charged unlawful uttering of United States Treasury Check No. 81,629,168, dated April 3, 1975, and payable to Lola A. Peacock in the amount of One Hundred Sixty-eight and 40/100 ($168.40) Dollars. Count Six charged unlawful uttering of United States Treasury Check No. 81,655,488, dated April 3, 1975, and payable to Anna S. McCutchen in the amount of One Hundred Twenty-nine and NO/100 ($129.00) Dollars. The instruments forming the basis for counts five and six will be referred to as the PEACOCK and McCUTCHEN checks respectively.

3. The indictment charged that "[o]n or about the 3rd of April, 1975 . . . the defendants . . . did unlawfully, wilfully, knowingly and with intent to defraud the United States,

*Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) requires us to view the evidence adduced at trial in the light most favorable to the government when evaluating the sufficiency of evidence to support a conviction. In determining whether the district court erred in denying appellants' motion for judgment of acquittal we also look to this Court's recent decision in *United States v. Lonsdale*, 577 F.2d 923, 925 (5th Cir. 1978).

The test of the sufficiency of proof on a motion for judgment of acquittal, and on review of the denial of such a motion, is whether the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973). *See United States v. Rojas, supra*, 537 F.2d [216] at 220 [(5th Cir. 1976).] A trial judge should not permit a case to go to the jury if the evidence is so scant that the jury could only speculate or conjecture as to the defendant's guilt, and "a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reason-

ably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Stephenson, supra*, 474 F.2d at 1355 (emphasis in original). *See United States v. Haggins*, 545 F.2d 1009, 1012 (5th Cir. 1977); *United States v. Barrera*, 547 F.2d 1250, 1255 (5th Cir. 1977).

Since appellants' alleged guilt was predicated on the government's theory that they aided and abetted McIntosh in uttering the PEACOCK and McCUTCHEN checks set forth in Counts Five and Six of the indictment respectively, see note 2 *supra*, the elements of the offenses which the government had the burden of proving beyond a reasonable doubt were not only those of the offense of uttering, but the elements of the offense of aiding and abetting as well.

The crime of uttering, proscribed by 18 U.S.C. § 495 (1976),[4] requires proof of *putting forth* a false writing, some attempt to circulate a check by means of a fraudu-

---

utter and publish as true and genuine a paper writing in the form of a check drawn upon the Treasury of the United States, with a falsely made and forged endorsement on the back thereof . . . and as the defendants then and there well knew said endorsement on the back of the above described check was falsely made, forged and counterfeit."

Although charging the appellants as principals the government made clear in its opening statement to the jury that it intended to show that appellants aided and abetted McIntosh in cashing the checks bearing the forged endorsements. Of course a person can be charged as a principal in uttering an instrument in violation of 18 U.S.C. § 495 (1976) and be convicted of aiding and abetting that offense, in violation of 18 U.S.C. § 2 (1976), even though the words "aid and abet" do not appear in the indictment. *United States v. Masson*, 582 F.2d 961, 963 (5th Cir. 1978) ("[A]n aider and abettor may be charged as a principal, and the words 'aid and abet' do not have to appear in the indictment in order to sustain a conviction as an aider and abettor."); *Giraud v. United States*, 348 F.2d 820, 822 (9th Cir. 1965) (unnecessary to charge defendant as aider and abettor; conviction for aiding and abetting offenses of forging and ut-

tering upheld where defendant charged only as principal). The district judge charged the jury on the offense of aiding and abetting.

4. Section 495 provides:

Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

*Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited*; or

Whoever transmits to, or presents at any office or officer of the United States, any such writing in support of, or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 495 (1976) (emphasis added).

lent representation that it is genuine. *United States v. Lonsdale*, 577 F.2d 923, 924 n. 1 (5th Cir. 1978); *United States v. Watts*, 532 F.2d 1215, 1218 n. 2 (8th Cir.), *cert. denied*, 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976); *United States v. Brown*, 495 F.2d 593, 597 n. 4 (1st Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974). The government also must prove a defendant's "intent to defraud". *United States v. Lewis*, 592 F.2d 1282, 1286 (5th Cir. 1979).

■ The crime of aiding and abetting, proscribed by 18 U.S.C. § 2 (1976),[5] occurs when an individual *associates* himself with a criminal venture, *participates* in it as in something he wishes to bring about, and seeks by his actions to make it succeed. *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *United States v. Cowart*, 595 F.2d 1023, and 1031 (5th Cir. 1979); *Moore v. United States*, 356 F.2d 39, 43 (5th Cir. 1966).

To prove association, there must be evidence to establish that the defendant "shared in the criminal intent of the principal." *United States v. Smith*, 546 F.2d 1275 (5th Cir. 1977). To prove participation, there must be evidence to establish that the defendant engaged in some affirmative conduct; that is, there must be evidence that defendant committed an overt act designed to aid in the success of the venture. Proof of mere negative acquiescence will not suffice. *United States v. Martinez*, [555 F.2d 1269 (5th Cir. 1977)]; *United States v. Smith, supra*.

*United States v. Cowart*, 595 F.2d 1023, 1035, (5th Cir. 1979), quoting from *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978).

■ Measured against these standards the evidence produced by the government at trial is not sufficient to support appellants' convictions either as principals or as aiders and abettors. To hold otherwise would seem to affirm a jury's verdict based upon suspicion and innuendo. *See United States v. Palacios*, 556 F.2d 1359, 1365 (5th Cir. 1977) ("Juries must not be permitted to convict on suspicion and innuendo.").[6]

## II

■ Viewed in the light most favorable to the government, the evidence adduced at trial established that: the PEACOCK and McCUTCHEN checks were mailed by the Department of the Treasury on April 1, 1975 and were uttered on or about April 3, 1975; the forged Hornsby endorsement[7] on the PEACOCK and McCUTCHEN checks

5. Section 2 provides:
   (a) *Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.*
   (b) Whoever willfully causes an act to be done which if *directly performed by him or* another would be an offense against the United States, is punishable as a principal.
   18 U.S.C. § 2 (1976) (emphasis added).

6. Judge Goldberg's opinion in *United States v. Lonsdale*, 577 F.2d 923 (5th Cir. 1978), places the case sub judice in proper perspective.
   This case summons us to apply the principle that the government must prove a defendant guilty beyond a reasonable doubt. In most instances the jury conscientiously discharges its duty of judging the guilt or innocence of the accused. The parade of convicted defendants who pass ceaselessly before this court and whose convictions are justifiably affirmed bears tribute to the judgment of citizens who serve on juries. We are ever mindful of the leavening influence of juries and of their concomitant compassion. But while we salute the wisdom of placing the jury at the heart of our criminal justice system, we must not forget the importance of our own role in that system as a reviewing court or becomes callous in our application of the fundamental principle that the government must prove a defendant guilty beyond a reasonable doubt.
   *Id.* at 925.

7. As indicated above, note 2 *supra*, the payees of the checks unlawfully uttered were Peacock and McCutchen. Below the forged payee endorsements on these checks appears the endorsement of Warren Hornsby. That endorsement, as testified to by Hornsby, was forged. Hornsby's testimony also established that he never received the original copy of his driver's license which had been mailed several weeks

was in Larry Eddy's handwriting; Raymond Eddy's fingerprints were on the PEACOCK and McCUTCHEN checks; the individual who cashed the PEACOCK check testified that the name McIntosh *sounded familiar*; neither of the individuals who cashed the PEACOCK or McCUTCHEN checks could identify appellants or McIntosh as having been the "young men" who uttered the instruments;[8] and the individual who cashed the Massey check (Count One, on which the jury returned a verdict of not guilty) testified that appellants' faces looked familiar but he could not positively say that they cashed the Massey check or merely had been customers of the supermarket where the check was cashed. There was no other substantive evidence upon which the jury could base a verdict of guilty.[9]

---

prior to April 1975. He also testified that the driver's license number appearing on the back of the McCUTCHEN check was the same number on Hornsby's duplicate, and presumably original, license.

**8.** Debbie Wood, an employee of City National Bank in April 1975, cashed the PEACOCK check. She could not identify the appellants as having been the "young men" who uttered the checks. The government emphasizes that the check-cashing procedure employed by City National Bank, as reflected in Wood's testimony, is one fact from which the jury could have inferred that Larry Eddy uttered the PEACOCK check. The relevant testimony reads as follows:

Q. Mrs. Wood, on the back of that check, it's signed by two parties, is it not? Would you tell us who signed it on the back?
A. It's got Lola Peacock's signature and a Warren Hornsby's signature.
Q. And on the Warren Hornsby is there some other identification or other information to help you identify it?
A. Well, I wrote down the driver's license number and his birth date.
Q. And would you have gotten this information from some driver's license?
A. Yes, sir. We couldn't take it unless it was off of a driver's license.

Wood never testified, however, that she observed the person offering the check to be cashed place his endorsement on the check. In fact, her position as a "drive-in teller" would seem to have made it physically impossible for her to observe whether the person cashing the check placed his endorsement thereon at the time the check was presented. Since there was no proof that the Hornsby endorsement was made at the time the check was presented, it is possible that the forged endorsement was made prior to that time. The same could be true of the Hornsby signature which presumably appeared on the lost Hornsby driver's license, although there was no testimony that such license did bear a signature. Consequently, the absence of such proof relegates the government's case against Larry Eddy to aiding and abetting uttering. As such we find an absence

of competent substantive evidence, either direct or circumstantial, that Larry Eddy associated himself with the criminal venture of uttering this instrument, participated in this venture as in something he wished to bring about, and sought by his actions to make it succeed. *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). There was insufficient evidence to show that he "shared in the criminal intent of the principal" since there was no evidence who that principal was.

**9.** Appellants asserted as error the district court's admission of hearsay testimony regarding an alleged oral statement made by McIntosh to Secret Service Agent Johnson. Johnson testified that McIntosh told him that the checks McIntosh cashed were received "from *either* R. D. Eddy *or* Larry Eddy." Record, vol. 2, at 105 (emphasis added). This testimony was not hearsay because not offered or admitted "to prove the truth of the matter asserted". Fed.R.Evid. 801(c). Rather, this testimony was offered for the limited purpose of impeaching McIntosh: McIntosh testified at trial that he received the checks he uttered from "a guy" with whom he was "shooting pool", and not the Eddys. *See United States v. Winkle*, 587 F.2d 705, 710 (5th Cir. 1979) ("[I]mpeachment to demonstrate the untruth of the witness' testimony is not excludable as hearsay because it is not offered primarily to prove the truth of the matter asserted but to contradict the prior testimony."). The district judge properly instructed the jury on two occasions that Agent Johnson's testimony about McIntosh's alleged oral statement implicating appellants was not to be used as evidence of appellants' guilt, but merely for the limited purpose of assessing McIntosh's credibility. *See generally* Fed.R. Evid. 105. Therefore, testimony regarding McIntosh's prior inconsistent statement to Agent Johnson, admitted for the purpose of impeaching McIntosh's credibility, was not to be considered by the jury as substantive evidence of appellants' guilt. *United States v. Palacios*, 556 F.2d 1359, 1363 (5th Cir. 1977); *United States v. Sisto*, 534 F.2d 616, 623 (5th Cir. 1976). Bearing the district court's limiting instruction in mind, our scope of review is

The presence of Raymond Eddy's fingerprints on the PEACOCK and McCUTCHEN checks is not sufficient, standing alone, to support his conviction. There was no proof, direct or circumstantial, introduced which tended to show that these fingerprints were left on the check during the course of uttering it, nor was there any handwriting analysis or eyewitness identification linking Raymond Eddy to the unlawful uttering of these checks. *Compare United States v. Lonsdale*, 577 F.2d 923 (5th Cir. 1978) (district court erred in denying defendant's motion for judgment of acquittal where only evidence produced was unexplained presence of fingerprints on uttered check, and no eyewitness or handwriting identification) *and United States v. Stephenson*, 474 F.2d 1353 (5th Cir. 1973) (insufficient evidence to support conviction for possession of heroin where only evidence linking defendant to heroin was fingerprints on glassine envelopes containing heroin but no evidence showing fingerprints placed on envelopes when they contained heroin) *with United States v. Henderson*, 588 F.2d 157, 159–60 (5th Cir. 1979) (sufficient evidence, apart from defendant's fingerprints on uttered check, to support conviction for uttering; court properly admitted evidence of defendant's fingerprints on uttered check where there was direct testimony by co-conspirator that defendant handled check during the commission of the crime). The government bears the burden of proving that Raymond Eddy uttered the PEACOCK and McCUTCHEN checks, not that he merely touched them. *United States v. Lonsdale*, 577 F.2d at 926. The government

failed to satisfy this burden, adducing evidence that was so inconclusive that a reasonable jury must have entertained a reasonable doubt about Raymond Eddy's guilt.

■ The same conclusion must be reached with respect to Larry Eddy's conviction. The fact that the Hornsby forged endorsement was made in Larry Eddy's handwriting would be evidence from which a jury might find that Larry Eddy committed some "overt act". This would tend to establish one element of the offense of aiding and abetting—participation. *United States v. Cowart, supra; United States v. Longoria, supra.* However, there was no evidence, direct or circumstantial, to prove that Larry Eddy " 'shared in the criminal intent of the principal' ", McIntosh. Consequently, a reasonable jury must have entertained a reasonable doubt about one element of the offense of aiding and abetting —association. *Id.* Without some evidence that Larry Eddy "engaged in some affirmative conduct designed to aid in the success of the venture *with knowledge that his actions would assist* [McIntosh]", *United States v. Cowart*, 595 F.2d at 1031 (emphasis in original), the jury's verdict could only have been based upon suspicion, innuendo, and, most probably, improper consideration of Agent Johnson's testimony.[10]

Having concluded that there was not sufficient evidence to permit the jury to consider appellants' guilt on the theory of aiding and abetting, we must also conclude that there was insufficient evidence to convict appellants as principals: there was *no evidence* that *they* put forth a false writing

limited to "weigh[ing] the evidence other than the [inconsistent statement] in the light most favorable to the government". *United States v. Palacios*, 556 F.2d at 1363–64.

**10.** *See* note 9 *supra.* The government's burden of obtaining a conviction for aiding and abetting the crime of uttering under section 495 is, admittedly, difficult, especially where circumstantial evidence must serve as the government's entire case. As illustrated in *Cotton v. United States*, 409 F.2d 1049 (10th Cir. 1969), *cert. denied*, 396 U.S. 1016, 90 S.Ct. 577, 24 L.Ed.2d 507 (1970), this burden is not insuperable.

In *Cotton* the Court of Appeals for the Tenth Circuit held that there was sufficient evidence to sustain the appellant's conviction for aiding and abetting the offense of uttering a forged instrument. In that case there was testimony that appellant was present when the endorsement on a check was forged and that he and three other individuals left with the forged check and returned with the proceeds. The court concluded that this testimony was sufficient evidence from which the jury could find that appellant consciously shared in the criminal acts of the principals. The evidence introduced in the district court in the case sub judice stands in sharp contrast to *Cotton.*

with the requisite intent to defraud. Accordingly, the judgment of conviction entered below as to each appellant is

REVERSED.