**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Arnell SMITH, Defendant–Appellant.**

**No. 80–7063.**

United States Court of Appeals,
Fifth Circuit.
Unit B

Nov. 24, 1980.

John R. Ferrelle, Brunswick, Ga. (Court–appointed), for Arnell Smith.

Melissa S. Mundell, David Roberson, Savannah, Ga., for plaintiff–appellee.

Before GEWIN, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Appellant Arnell Smith appeals from his conviction, after trial by jury, for offenses arising out of the theft from the mail and negotiation of a United States Government check. Smith and two co–defendants, Bobby Jerome Cooper and Roger Eugene Sapp, were each convicted on both counts of a two–count indictment charging them with possessing a government check[1] stolen from the mails, 18 U.S.C.A. § 1708,[2] Count 1; uttering the same check, 18 U.S.C.A. § 495,[3] Count 2; and aiding and abetting, 18 U.S.C.A. § 2,[4] Counts 1 and 2. The United States District Court for the Southern District of Georgia sentenced Smith to four years' imprisonment on Count 1 and to three years' probation on Count 2, the sentences to run consecutively.

Smith raises three points on appeal; however, we pretermit consideration of all but one, holding that the judgment of conviction must be reversed because of insufficient evidence.[5]

On August 30, 1977, between 11:00 a. m. and 1:00 p. m., Sapp drove alone in an orange Volkswagen to the drive–up window of the Altama Avenue branch of the Coastal Bank of Georgia in Brunswick and attempted to negotiate a United States Treasury check. The check was in the amount of $815.24 and named Vernon D. Alston as the payee. The check had been mailed from Cleveland, Ohio, addressed to Alston in Brunswick; Alston never received the check. At the time Sapp presented the check to the teller, it was endorsed with Alston's name. The teller at the window stamped the check and wrote the Volkswagen's license tag number on the back of the check before asking Sapp for identification. Sapp showed the teller a social security card as identification and told her that he had a loan account with the bank, but she refused to cash the check because of lack of proper identification. The teller identified Sapp as the driver of the Volkswagen who presented the Alston check to her.

On the same day, August 30, 1977, at about 11:00 or 11:30 a. m., Smith, driving alone in an orange Volkswagen,[6] presented a *similar* government check to the teller at the drive–up window at the First National

---

1. United States Treasury check No. 46,869,970, over symbol 5178, dated August 30, 1977, payable to Vernon D. Alston in the amount of $815.24.

2. Section 1708, 18 U.S.C.A., provides in pertinent part that "[w]hoever . . . unlawfully has in his possession, any . . . mail, or any article or thing contained therein, which has been . . . stolen, . . . knowing the same to have been stolen, . . . [s]hall be fined not more than $2,000 or imprisoned not more than five years, or both."

3. "Whoever utters or publishes as true any . . . false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited . . . [s]hall be fined not more than $1,000 or imprisoned not more than ten years, or both." 18 U.S.C.A. § 495.

4. Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C.A. § 2(a).

5. Smith maintains that the district court erred in (1) denying his motions for judgment of acquittal made pursuant to Fed.R.Crim.P. 29(a) and for judgment notwithstanding the verdict, because the evidence was insufficient to sustain his conviction; (2) denying his motion for a new trial, because the verdict was contrary to the evidence and because he was prejudiced by the court's denial of his motion for severance; and (3) denying his motion to dismiss the indictment, because of pre–indictment delay. We reverse on the first point asserted.

6. The teller told a Secret Service Agent at an interview in November, 1978, that the car may have been blue or orange.

Bank on Altama Avenue in Brunswick. The teller was unable to identify the Alston check as being the same check presented for payment by Smith–she testified only that it was similar to the Alston check because, as she said, all government checks look alike. The check at that time did not have a bank teller's stamp on it. The teller could not remember the payee's name. At trial the teller stated that she was unable to remember whether the check was endorsed when it was presented to her but in an interview on September 2, 1977, she told a detective that the check was unendorsed when presented to her. Because Smith offered only a social security card as identification, the teller refused to cash the check. On September 2, 1977, the teller identified Smith from a photographic spread as the man who presented the check to her. She also made an in–court identification of Smith.

On the afternoon of August 30, 1977, between 3:00 and 5:00 o'clock, Sapp and two other men arrived at the Drew Pitts Auto Sales in Jacksonville, Florida, in an orange Volkswagen. Representing himself to be Alston, the check's payee, Sapp gave the check to Pitts as a down payment on a 1971 Buick LeSabre. From a photographic spread shown to him approximately six months later, Pitts identified Sapp as the purchaser. One of Pitts' salesmen, who was also shown photos, also identified Sapp as the purchaser and stated that Smith looked "familiar" but that he could not say whether he had seen Smith at the car lot or somewhere else in Jacksonville. Initially, Pitts had refused to accept the check because the purchaser was from out of town and with the Navy. The men left and returned with a receipt from a furniture store indicating payments to that store. Pitts then accepted the check as a down payment and returned $300 cash to the purchaser Sapp. Sapp signed the check in Pitts' presence. Neither Smith's nor his co–defendants' fingerprints were found on the Alston check or the documents executed

in connection with the sale of the Buick. Also, neither Smith's nor his co–defendants' handwriting matched the handwriting of the person who endorsed the check with Alston's name.

On September 1, 1977, a witness observed two or three men in a 1971 Buick pull into an abandoned lot where one of the men wiped the car off with his T–shirt.[7] About five minutes after the witness, who lived near the lot, went onto her porch, the men ran. She identified Smith as the man who had wiped off the car. Co–defendants Cooper's and Sapp's fingerprints were found on the Buick; Smith's fingerprints were not.

Cooper and Sapp testified at trial, denying that they uttered the check in either Brunswick or Jacksonville. They did not implicate Smith, who did not testify at trial. Cooper testified that he owned an orange Volkswagen and that he drove two men, not Smith or Sapp, but rather McDowell and Phillips, to Jacksonville where McDowell purchased the Buick. Cooper also stated that McDowell gave him the Buick and that he (Cooper) in turn gave it to Smith and Sapp. Sapp's version was that Cooper offered to sell the Buick to Sapp and Smith. After taking the car for a test drive, they subsequently abandoned it after learning that it was "hot" and after Sapp had wiped fingerprints off the car with his T–shirt. Both Cooper and Sapp admitted lying to Secret Service agents when first questioned about the Buick.

Cooper admitted, during an investigatory interview with a Secret Service agent, that his orange Volkswagen had been used in an attempt to negotiate the Alston check at the Coastal Bank and at the First National Bank. He did not, however, implicate Smith in those attempts.

▓▓▓▓ On appeal this Court must view the evidence adduced at trial in the light most favorable to the government making reasonable inferences and credibility choices in favor of the trier of fact. *United States*

7. The witness told a detective that there were two men in the car; she testified at trial that there were three men.

*v. Hawkins*, 614 F.2d 85, 87 (5th Cir. 1980); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The jury verdict must stand "[i]f, when examined in that light, the evidence is sufficient that a jury might reasonably conclude that it is inconsistent with the hypothesis of the defendant's innocence." *United States v. Hawkins, supra*, 614 F.2d at 87. Whether the district court erred in denying Smith's motion for judgment of acquittal is determined by the standard set forth in *United States v. Lonsdale*, 577 F.2d 923 (5th Cir. 1978):

> A trial judge should not permit a case to go to the jury if the evidence is so scant that the jury could only speculate or conjecture as to the defendant's guilt, and "a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged."

*Id.* at 925, quoting *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973).

Count 1 of the indictment charged Smith with unlawful possession of the Alston check that was stolen from the mail and with aiding and abetting his co–defendants in their possession of that check. The government was required to prove, for conviction of Smith under 18 U.S.C.A. § 1708, that he possessed the Alston check stolen from the mail, knew that it was stolen, and had the specific intent to possess that check unlawfully. *United States v. Hawkins, supra*, 614 F.2d at 87; *United States v. Dawson*, 608 F.2d 1038, 1039 (5th Cir. 1979).

■ Although the government introduced no direct testimony that the Alston check was stolen from the mail, a jury may infer and find beyond a reasonable doubt that an item has been stolen from the mail from evidence of due mailing and non–receipt. *United States v. Hawkins, supra*, 614 F.2d at 87; *United States v. Duckett*, 583 F.2d 1309 (5th Cir. 1978). However, there was no evidence that Smith ever possessed the Alston check. The bank teller who identified Smith as the man who attempted to cash a government check could not identify that check as the Alston check. Mere similarity of the checks cannot support an inference that the check presented by Smith was the Alston check. Handwriting analysis of the endorsements on the Alston check as well as an examination for fingerprints on the check both failed to show any connection of Smith with that check. There was a clear lack of evidence from which the jury could reasonably infer that Smith possessed the Alston check. There was no evidence from which the jury could reasonably rule out the hypothesis that the check presented by Smith was a check other than the Alston check.

■ In order to prove that Smith aided and abetted (18 U.S.C.A. § 2) his co–defendants in violation of Section 1708, the government was required to show that Smith associated himself with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed. *United States v. Eddy*, 597 F.2d 430, 433 (5th Cir. 1979); *Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). The government, in order to prove association, had to establish that Smith shared in the criminal intent of the principal and, to prove participation, had to establish that he engaged in some affirmative conduct designed to aid in the success of the criminal venture. *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978).

The government argues that the jury could reasonably infer that Smith was associated with the illegal possession of the Alston check on the basis of the close temporal proximity of the presentation of the check at Coastal Bank by Sapp and at the First National Bank by Smith, the evidence that Cooper's orange Volkswagen was involved at both banks, and the testimony that Smith was observed wiping down the Buick purchased with the stolen check.

■ The government's attempt to forge a chain of reasonable inferences supporting the conclusion that Smith associated with

his co–defendants or participated in the criminal venture fails. The evidence was simply not sufficient to permit the jury to find Smith guilty on the theory of aiding and abetting the illegal possession of the Alston check. The only evidence that Smith was involved in Sapp's attempt to negotiate the check at the Coastal Bank was evidence that earlier that day Smith had attempted to cash a similar check at another bank in a car very similar to the one used by Sapp. The government's only evidence at trial that Smith was present in Jacksonville when the Buick was purchased by Sapp with the Alston check was a very uncertain identification by a salesman at the car lot. The mere fact that Smith wiped fingerprints off a car purchased with a stolen check cannot support an inference that he aided and abetted in the possession of that stolen check. There was, in short, no adequate evidence of association or participation in the offense of possession of a stolen government check. The trial record does not reflect any evidence proving Smith's guilt beyond a reasonable doubt or sustaining his conviction on Count 1 of the indictment. Judgment of acquittal on this count should have been granted. *See United States v. Eddy, supra.*

Count 2 of the indictment charged Smith with uttering the Alston check in violation of 18 U.S.C.A. § 495 and with aiding and abetting his co–defendants in uttering that check in violation of 18 U.S.C.A. § 2. The crime of uttering requires proof of putting forth a false writing, an attempt to circulate a check by fraudulent representation that it is genuine, and proof of the defendant's intent to defraud. *United States v. Eddy, supra,* 597 F.2d at 432–33.

■ The evidence of Smith's abandonment of an automobile purchased with the Alston check and his attempt to negotiate a similar United States Treasury check on the same day that Sapp did does not support a reasonable inference that Smith uttered the Alston check. As discussed earlier, there was insufficient evidence at trial indicating that Smith himself put forth a false writing with the requisite intent to defraud, *i. e.,*

that he put forth the Alston check for negotiation. There was thus insufficient evidence to support Smith's conviction on the substantive crime, violation of Section 495, charged in Count 2. *See United States v. Hawkins, supra,* 614 F.2d at 87–88; *United States v. Eddy, supra,* 597 F.2d at 434–36.

■ Nor did the government succeed in proving that Smith aided and abetted in the uttering as charged in Count 2. Just as with the aiding and abetting charge of Count 1, there was insufficient evidence at trial that Smith associated with and participated in the attempted uttering of the Alston check by Sapp. *United States v. Eddy, supra,* 597 F.2d at 433–35. A reasonable jury must have entertained a reasonable doubt about the association and participation elements of the offense of aiding and abetting.

Thus, the evidence adduced was insufficient to support a conviction on Count 2 of the indictment. Judgment of acquittal should also have been granted on this count.

We conclude that the evidence adduced by the government at trial was not sufficient on either charge to support Smith's conviction either as a principal or as an aider or abettor. Mere suspicion and innuendo cannot be the basis for the jury's verdict. *United States v. Eddy, supra,* 597 F.2d at 433; *United States v. Palacios,* 556 F.2d 1359, 1365 (5th Cir. 1977). Because the evidence in this case is insufficient to convince a jury of Smith's guilt beyond a reasonable doubt, we conclude that the district court erred in not granting Smith's motion for judgment of acquittal.

REVERSED.