**Susan LATERZA, Dorian McFadden, James Gainey, Sally Bonin, and Mark Studis, Plaintiffs,**

v.

**AMERICAN BROADCASTING CO., INC., The Atlantic Monthly, Inc., CBS, Inc., Hearst Publications, Johnson Publishing Co., Inc., McCall Publishing Co., Inc., Esquire Associates, Triangle Publications, Inc., The Times Mirror Company, Ziff Davis, Publishing Co., Circulation Builders of America Co., Inc., National Circulating Co., Inc., North American Book Sales, Inc., Solar Circulation, Inc., Sylvester Brown, Joseph Edge, Joy Edge, Walter Lake, John Does Nos. 1 through 100, Defendants.**

**No. 83 Civ. 4643 (HFW).**

United States District Court, S.D. New York.

Feb. 21, 1984.

Koenig, Ratner & Mott, P.C. by Mark G. Stern, New York City, for defendant Esquire Associates.

Robert J. Hawley, New York City, for defendant The Hearst Corp.

Ottenbourg, Steindler, Houston & Rosen, P.C. by Meryl E. Wiener, New York City, for defendant The McCall Pub. Co., Inc.

Katharine P. Darrow by Kenneth A. Richieri, New York City, for defendant The New York Times Co.

Farber & Cohen by Frank R. Cohen, New York City, for defendant Peterson Pub. Co., Inc.

Alison Anthoine, New York City, for defendant Ziff-Davis Pub. Co.

Seward & Kissel by Anthony R. Mansfield, Edward G. Imperatore, Nancy R. Greenberg, David S. Heller, New York City, for defendants National Circulating Co., Inc. and Sylvester M. Brown.

Traub, Bonacquist & Yellen, Dwight Yellen, Harold F. Bonacquist and Paul Traub, New York City, for plaintiffs.

Weil, Gotshal & Manges by Mark A. Jacoby, Maranda E. Fritz, New York City, for defendants The Times Mirror Co., Johnson Pub. Co., and Triangle Publications, Inc.

Leonard I. Horowitz, James Imbriaco, New York City, of counsel, for The Times Mirror Co.

June A. Rhinehart, Chicago, Ill., of counsel, for Johnson Pub. Co., Inc.

Kohn, Savett, Marion & Graf by Stuart H. Savett, Philadelphia, Pa., of counsel, for Triangle Publications, Inc.

Frank J. Connors, New York City, for defendant American Broadcasting Companies, Inc.

Douglas P. Jacobs, McLaughlin, Simone & Lawlor, New York City, for defendant Columbia Broadcasting Systems, Inc.

Epstein, Becker, Borsody & Green, P.C. by Stephen R. Mills, New York City, for defendants Circulation Builders of America and Joe Edge.

## MEMORANDUM DECISION

WERKER, District Judge.

Plaintiffs seek relief against defendants under a somewhat novel application of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* They seek to recover damages for injuries allegedly sustained as a result of a systematic nationwide pattern of racketeering involving the cash field subscription aspect of the magazine publishing industry. Plaintiffs are five individuals who were employed by various field sales representatives between June 1981 and March 1983. Twelve of the defendants are publishers of nationally circulated magazines ("Publisher Defendants").[1] The remaining defendants, including 100 John Does, are circulation companies and their officers, directors, employees and agents ("Subscription Agents") who solicit magazine subscriptions for the Publisher Defendants. The matter is presently before the court on defendants' mo-

---

1. The Atlantic Monthly who is also a publisher of nationally circulated magazines has not joined in the motion filed by the Publisher Defendants.

tion to dismiss under Fed.R.Civ.P. 9 and 12 or, in the alternative, for summary judgment under Fed.R.Civ.P. 56 and for an award of attorney's fees pursuant to Fed. R.Civ.P. 11.

## FACTS

Each year, a small percentage of subscriptions for numerous nationally circulated magazines, including those of the publisher defendants, are solicited through door-to-door sales. This sales device, known as "cash field subscriptions", is conducted through a series of arrangements between independent contractors, each of whom takes responsibility for a different level of the operation. The first level is a contractual arrangement between magazine publishers and circulation companies whereby the publishers agree to process the subscriptions remitted by the companies in exchange for a percentage of the sale price of the magazine subscription. The circulation companies in turn contract with "field sales representatives" who administer the arrangement on a local level. The field sales representatives hire sales agents, such as the plaintiffs herein, who are moved from one location to the next under the supervision of "carhandlers" to solicit sales on a door-to-door basis. Although it is not entirely clear from the record, it appears that the carhandlers are employees of the field service representatives.

Reading the allegations of the complaint in the light most favorable to the plaintiffs, the facts appear as follows. Plaintiffs are five young adults, who at the times relevant to this complaint, were seeking employment. Each of the plaintiffs responded to an advertisement in his or her local newspaper which offered what appeared to be well-compensated employment to young people. The advertisements listed a number to call for an interview. In response to telephone inquiries, each of the plaintiffs was advised that the job was in sales. Interviews with a representative of one of the defendant Subscription Agents were scheduled for each plaintiff and held within a matter of hours. Each of the plaintiffs was offered employment if he or she could leave for a training session at a distant location on the same day. Each of the plaintiffs accepted the proffered employment. During the course of their respective interviews and periods of employment—which ranged in length from four (4) days to eighteen (18) months—substantial representations as to the terms and conditions of employment were made to each of the plaintiffs. Among other things, plaintiffs were told that they would each make between $300 and $500 a week, that valuable prizes would be awarded to employees as an incentive to perform, that during their training period, room and board would be provided free of charge, and that a portion of their earnings would be held for them in savings accounts. Each of the plaintiffs relied on these representations in accepting and continuing in their respective employment relationships and, not surprisingly, the promises were not kept.

Plaintiffs were also victims of substantial omissions of material facts with respect to their employment. The most notable for present purposes is that none of the plaintiffs was advised that he or she would be subject to mind control tactics which would deprive them of their free will. Plaintiffs allege that the one hundred and twenty or so defendants conspired to deprive the plaintiffs of the fruits of their labor through mind control techniques.

Plaintiffs seek to invoke the civil remedies of RICO by alleging in their complaint that defendants subjected them to various acts of extortion, racketeering, mail fraud and wire fraud. It is alleged that these acts constitute a pattern of racketeering activity and that defendants have used and invested directly or indirectly, part of the income or proceeds of such income derived from that activity in the acquisition of an interest in, or establishment and operation of an enterprise which engages in, or the activities of which affect, interstate commerce. Complaint ¶ 45–46. Plaintiffs further allege that they have been injured

within the meaning of RICO as the result of a pattern of misrepresentation in which each plaintiff was denied the benefit of their bargain. Complaint ¶ 47–49. As to the Subscription Agents, plaintiffs allege that they have established various companies, superficially unrelated, whose apparent function is to enter into contracts with magazine publishers for cash field subscription sales. Complaint ¶ 32. Through the use of the mails, telephones and newspapers, the Subscription Agents have carried out a scheme to defraud the plaintiff sales agents by directly or indirectly controlling and supervising the Field Sales Representatives. Complaint ¶ 33–36. Plaintiffs allege that the Publisher Defendants have long known about this arrangement and have benefitted from it. Complaint ¶ 37–38. Plaintiffs further allege that by continuing to contract with the Subscription Agents with knowledge of their illegal activities, the Publisher Defendants are liable as co-conspirators and as aiders and abettors. Complaint ¶ 39–40.

## DISCUSSION

■ In view of the liberal pleading policy of the Federal Rules and in reading the complaint in a light most favorable to plaintiffs, I believe plaintiffs' general allegations may be sufficient to state a RICO claim. Plaintiffs succeed in technically pleading an adequate RICO cause of action by echoing the language of the Second Circuit in *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir.1983), in paragraphs 32–46 of the complaint, *supra.* In order to recover from the publisher defendants under RICO, plaintiffs must allege "(1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invest[ ] in, or maintain[ ] an interest in, or participate[ ] in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. *Id.* at 17. Although plaintiffs' general allegations may withstand scrutiny under *Moss*, the factual allegations in support of elements 2 through 4 are grossly inadequate.

■ The Publisher Defendants argue that the complaint fails to adequately allege that they participated *as principals* in the commission of two or more predicate acts as required by element 2. Plaintiffs allege that the Publisher Defendants are liable as principals since they are co-conspirators and/or aiders and abettors within the meaning of 18 U.S.C. § 2. Complaint ¶ 37–40. In order to be liable for a substantive crime as an aider and abettor, plaintiffs must demonstrate that "the defendant consciously assisted the commission of the *specific crime* in some active way." *United States v. Dickerson*, 508 F.2d 1216, 1217–18 (2d Cir.1975) (emphasis added); *see also Nye & Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949).

■ Nowhere in plaintiffs' complaint is there an allegation that the Publisher Defendants participated in any specific criminal act. On the contrary, plaintiffs admit that the publisher's only connection with the purported predicate acts—which were allegedly committed by the field sales representatives who are not parties to this action—is by way of contract with the Subscription Agents. Plaintiffs' general and conclusory allegations that the Publisher Defendants knew about the alleged illegal activity of the field sales representatives and, in continuing to contract with the Subscription Agents to sell magazines, aided and abetted those criminal activities are simply insufficient to impose criminal liability on the defendants under 18 U.S.C. § 2. *See United States v. Schwartz*, 666 F.2d 461 (11th Cir.1982); *United States v. Smith*, 631 F.2d 391, 395 (5th Cir.1980); *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir.1977). Plaintiffs, in amending their complaint, are directed to allege with supporting factual allegations how *each* of the individual Publisher Defendants participated as an aider or abettor in the requisite two predicate acts.

■ Plaintiffs' complaint suffers from a similar problem with respect to the attempt to impose liability on the Publisher Defendants as principals by way of a conspiracy.

There is no allegation that each member of the conspiracy "agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Martino,* 664 F.2d 860, 876 (2d Cir.1981) (citations omitted), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *see also United States v. Lemm,* 680 F.2d 1193 (8th Cir.1982), *cert. denied,* ─── U.S. ───, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983). Neither is there an allegation that each of the individual publishers came to an agreement with the Subscription Agents to engage in the criminal activity. *United States v. Kopituk,* 690 F.2d 1289, 1323 (11th Cir.1982), *cert. denied,* ─── U.S. ───, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); *United States v. Melton,* 689 F.2d 679, 683 (7th Cir.1982); *United States v. Bright,* 630 F.2d 804, 834 (5th Cir.1980). The mere fact that defendants contracted together is not enough to impose RICO liability on them.

▇▇▇▇ Moreover, if plaintiffs' theory is that the alleged conspiracy forms the basis for the predicate acts, the complaint is likewise insufficient. While the Second Circuit has recently held that certain conspiracies may serve as predicate acts of racketeering activity, *United States v. Ruggiero,* 726 F.2d 913 at 915 (2d Cir.1984), the complaint fails to adequately plead such a conspiracy. Under RICO's conspiracy provisions, remote associates of an enterprise may be convicted as conspirators. However, "to be convicted as a member of an enterprise conspiracy, an individual, by his words or actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise *through the commission of two or more predicate crimes.*" *United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.) (emphasis in original), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *see United States v. Ruggiero, supra,* at 921; *United States v. Martino,* 648 F.2d 367, 399–400 (5th Cir.1981), *cert. denied,* 456

U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982). Plaintiffs herein do no more than allege that the Publisher Defendants played an unspecified role in an undetailed conspiracy. There is no allegation that the individual Publisher Defendants conspired to commit two of the predicate acts. Moreover, in order to sufficiently allege a conspiracy under RICO, "a party must allege two acts of 'racketeering' with enough specificity to show there is probable cause [to believe] the crimes were committed." *Bache Halsey Stuart Shields v. Tracy Collins Bank & Trust Co.,* 558 F.Supp. 1042, 1045 (C.D.Utah 1983). Plaintiffs' allegations of conspiracy fall far short of alleging probable cause.

Since plaintiffs have not alleged that the Publisher Defendants committed two or more predicate acts either as aiders and abettors or as conspirators within the meaning of 18 U.S.C. § 1962, there is no "pattern" nor is there "racketeering activity". Thus, plaintiffs have failed to allege the existence of elements 2, 3 or 4.

▇▇▇ The Subscription Agents primarily attack the sufficiency of plaintiffs' allegations as to the predicate acts, i.e., extortion, racketeering, mail fraud and wire fraud. As is true of the Publisher Defendants, the complaint does not specifically allege participation by each of the Subscription Agents in two predicate acts as defined by § 1964(c). Plaintiffs merely allege that the subscription agents directly or indirectly supervised and controlled the field sales representatives who, in turn, engaged in illegal conduct. The field sales representatives, however, are simply under contract with the Subscription Agents. Absent further allegations, I cannot determine whether or which Subscription Agents have committed the predicate acts alleged in the complaint.[2] In amending the complaint, plaintiffs should allege sufficient facts on which this court could find that each of the individual Subscription Agents engaged in

---

**2.** Since plaintiffs are permitted to amend their complaint, I need not consider at this time defendants' motion to dismiss for failure to plead

fraud with particularity as required by Fed.R. Civ.P. 9.

at least two acts of extortion, racketeering, mail fraud or wire fraud.

■ Both the Publisher Defendants and the Subscription Agent defendants argue that the complaint does not adequately allege "enterprise" as defined in § 1961(4). Plaintiffs, however, allege three alternative enterprises at least two of which constitute an "enterprise" within the meaning of RICO. The term "enterprise" is defined in 18 U.S.C. § 1961(4) to mean "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity". The enterprise must be "separate and apart from the pattern of activity in which it engages," *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), or, if not a legal entity, the enterprise must be a "group of individuals associated together for a common purpose of engaging in a course of conduct" with "an ongoing organization" and with "the various associates function[ing] as a continuing unit." *Id.*

■ Paragraphs 31 through 36 of the complaint which describe the cash field subscription sales device clearly alleges a common purpose among the members as well as a continuity of structure and personnel. In addition, each of the defendants may constitute such an enterprise. Complaint ¶ 42. However, plaintiffs' general assertion that the combination of defendants constitutes an "enterprise", Complaint ¶ 43, without allegations as to continuity of structure or personnel will be stricken unless supporting factual allegations are included in the amended complaint.

■ Defendants also argue that the complaint should be dismissed because plaintiffs have failed to adequately allege a racketeering injury. Defendants contend that plaintiffs' injuries arise solely from the commission of the predicate acts and that, standing alone, such allegations do not satisfy the requirements of 18 U.S.C. § 1964. In support of their contention, defendants rest on, *inter alia*, my recent decisions in *King v. Lasher*, 572 F.Supp. 1377 (S.D.N.Y.1983), and *Richardson v. Shearson/American Express, Co.*, 573 F.Supp. 133 (S.D.N.Y.1983). Each of these cases, however, antedate the decision of the Second Circuit in *Moss, supra,* and, in fact, *King* was decided on other grounds. In *Moss*, the Second Circuit appears to invite the district court to more fully develop the rationale underlying "racketeering injury". *See Moss v. Morgan Stanley, Inc.*, 719 F.2d at 20 n. 16. Defendants in this case offer no cogent explanation for the limitation. If plaintiffs have failed to allege a racketeering injury because the injury is nothing more than the result of the predicate acts, this court is hard-pressed to explain what type of injury satisfies the requirements of § 1964. *See Slattery v. Costello*, No. 83–0982 (D.D.C. July 28, 1982) (concluding that there is no satisfactory definition for the term "racketeering injury").

Finally, based on the affidavits submitted by defendants, both the Publisher Defendants and the Subscription Agents move for summary judgment. While I believe the motion is premature in light of the above, I do note that in response to defendants' motion, plaintiffs have not presented any competent evidence on which this court could find that a genuine issue of fact exists.[3] Thus, if after the amended com-

---

**3.** In opposition to the motion, plaintiffs present 28 exhibits—only one of which is an affidavit. The affidavit is a statement from the mother of one of the plaintiffs in this action and purports to authenticate the transcripts of tape recordings (which are included as exhibits) she made of conversations she had with a representative of a wholly-owned subsidiary of defendant New York Times Company, a representative of the Magazine Publishers Association and a former president of a company owned and operated by

defendant Joe Edge. Also, included as exhibits are unsworn letters from certified social workers, private investigators and representatives of groups who investigate cults; transcripts from radio and television newscasts and talk shows; newspaper articles; a 1978 marketing report, reports from the Better Business Bureau concerning field sales representatives; evidence of 1970–1976 federal investigations into field sales representatives; a letter to plaintiffs' counsel from the Travelers Aid Society; excerpts from a

plaint is filed, defendants once again seek to attack the complaint, plaintiffs are admonished to present the court with evidence that would be admissible at trial to show that there exist genuine issues of material fact.

The complaint is dismissed and plaintiffs have twenty days in which to replead their RICO cause of action. Upon the filing of the amended complaint, if it is again inadequate, I will entertain defendants' motion for attorneys fees under Rule 11.

SO ORDERED.

book; the criminal record of a purported field sales representative; certificates of incorporation, and unsigned copies of subscription contracts.