**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joe Edward HALL, Defendant-Appellant.**

**No. 87–1896 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

May 18, 1988.

Wendell L. Davies, Amarillo, Tex., (court-appointed), for defendant-appellant.

James P. Laurence, Amarillo, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Joe Edward Hall was charged with one count of forging the endorsement on the back of a check drawn on the Treasury of the United States in violation of 18 U.S.C. § 495 and one count of possessing the same check knowing it to have been stolen from the United States mail in violation of 18 U.S.C. § 1708. Both counts also charged Hall with aiding and abetting these offenses.

On March 28, 1986, a tax refund check in the amount of $369.55, made out to Connie Sanders, was mailed from the Austin, Tex-as, IRS Center to Connie Sanders, 2109 N. Washington, Apt. A, Amarillo, TX 79107. Sanders never received the check. Sanders lived in a duplex, the other half of which was occupied by the defendant, Joe Edward Hall. Sanders and Hall shared a common mailbox.

Sanders filled out a claim form when she discovered that the check had been sent and that she had not yet received it. Sanders' real first name was "Commie," not "Connie." Sanders testified that she had used the name "Connie" for ten to fifteen years but also indicated that Hall could have heard her mother call her "Commie." Only her family knew her real name.

A Secret Service fingerprint specialist testified that he had developed a latent fingerprint on the back side of the Treasury check at a point just below and to the right of the endorsement. The witness determined it to have been made by Hall's right index finger. An investigator from the Texas district attorney's office reached the same conclusion. A Secret Service document examiner compared handwriting samples taken from Hall with the endorsement "Commie Sanders" which appeared on the back of the Treasury check, and concluded that there was some evidence indicating that Hall may have written the endorsement, but determined that the evidence was not conclusive. A handwriting expert adduced by defendant opined that the endorsement was not made by Hall. A checker at the grocery store where the check was cashed testified that, while she could identify her own handwriting on the check indicating that she had approved the check, she could not recall who cashed the check.

A jury found Hall guilty on both counts, and the court sentenced him to ten years on the forgery count and five years on the possession-of-stolen-mail count, with the sentences to run concurrently, fined Hall $50 on each count, and ordered him to make restitution.

On appeal, Hall challenges the sufficiency of the evidence as to both counts of the conviction.

■ Our standard of review on a challenge to the sufficiency of the evidence in a criminal case was stated in *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983):

> It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

The standard is the same whether the evidence be direct or circumstantial. *Id.*, 678 F.2d at 549 n. 3; *United States v. Young Bros., Inc.*, 728 F.2d 682, 687 n. 6 (5th Cir.1984). When reviewing sufficiency of the evidence to support a jury verdict, the evidence and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942). In this case, the defendant did not make a motion for judgment of acquittal at any time. When no such motion is made, the issue of sufficiency of the evidence is reviewable only to determine whether affirmance of the conviction would result in a "manifest miscarriage of justice." *United States v. Meneses-Davila*, 580 F.2d 888, 896 (5th Cir.1978).

### *Hearsay*

On cross examination of Commie Sanders, Counsel for defendant, after stating that Albert Ray Oliver had just been sworn as a potential witness, asked whether Sanders had advised the assistant United States attorney or the Secret Service agent working on the case that they should talk to Oliver. Sanders replied, "Yes, I did." Counsel for defendant next asked, "And what did you tell them?" The stunning answer was, "I told them that Albert Ray Oliver seen Joe Hall with the check." Later, on redirect examination of Sanders by the assistant United States attorney, the following examination took place:

Q Now, I believe you testified someone had told you that Mr. Oliver had seen Mr. Hall with the Check?

A Right.

Q Mr. Oliver didn't tell you that?

A Yes.

Q Mr. Oliver is the one who told you that?

A Right.

Q And do you recall what the full conversation was?

A No, not the full conversation. I just kind of recall that Joe walked up to him and asked him, did he know anybody that could help him cash the check. And then Joe showed the check to Albert, and when he seen the name on it—

[COUNSEL FOR DEFENDANT]: Your Honor, I object for hearsay.

THE COURT: Sustained.

[ASSISTANT U.S. ATTORNEY]: That's all I have, Your Honor.

Counsel never specified whether his objection only went to Oliver's comment to Sanders that he saw her name on the check Hall possessed, nor did Hall's counsel move to strike any part of Sanders' prior testimony about Oliver's statements on cross-examination or on redirect. Counsel never requested a curative or limiting instruction. The court did not, *sua sponte*, direct the jury to disregard any part of Sanders' testimony.

■ In this state of the record, the jury was entitled to credit the testimony of Sanders as showing that Oliver had seen Hall in possession of her check. Fed.R. Evid. 103(a)(1). Defense counsel opened this door. Indeed, in his brief to this court counsel explains that his strategy in doing so was "to elicit some information about [Oliver] inasmuch as he was not shown on the government's witness list and he just appeared on the morning of the trial." Allowing the jury to consider this proof adduced by the defendant as a deliberate part of trial strategy cannot be classified as plain error. Fed.Rule of Evid. 103(d).

Sanders testified that Oliver said Hall walked up to him with the check in hand and asked Oliver if Oliver knew anyone

who could help Hall cash the check. The jury was entitled to give this testimony its "natural probative effect as if it were not hearsay." *United States v. Bey*, 526 F.2d 851, 855 (5th Cir.), *cert. denied*, 426 U.S. 937, 96 S.Ct. 2653, 49 L.Ed.2d 389 (1976). That part of Sanders' answer was responsive to the question asked, "Do you recall what the full conversation was?" Although this question obviously could evoke only a hearsay response, counsel voiced no objection until Sanders had stated Hall sought Oliver's help in cashing the check and started to repeat her earlier testimony that the check Oliver saw in Hall's possession was her check. Only at that point did counsel become concerned with how much of Hall's conduct would come to light. Most significantly, no part of the answer was made the object of a motion to strike or of an instruction to the jury to disregard.

The strategy of developing what a surprise witness might say can be a sound one (although it is often dangerous trial tactics to ask questions without some knowledge of what the answers might be). Pursuing this strategy through hearsay left counsel exposed to the chance the government would not need to put its new witness, Oliver, on the stand. The decision to accept the damage done and stay quiet or enlarge the objection and risk a ruling that the line of questioning was opened by counsel's earlier cross-examination was another obvious part of trial strategy. While we cannot fault counsel for the decision he made, the fact that he did not pursue the matter by further objection, motion to strike, or motion to disregard, leaves this evidence within the range of proof we must view in deciding sufficiency under *Glasser*.

Given the fact that Hall had "opened the door" to developing Oliver's connection between Hall and Sanders' check, that no objection or request for court action was made, and that these procedures were part of counsel's trial strategy, we cannot say that the court's failure to *sua sponte* instruct the jury with regard to this testimony amounted to plain error which significantly and substantially prejudiced Hall. Fed.R.Civ.P. 52(b); *United States v.*

*Moore*, 505 F.2d 620, 624 (5th Cir.1974), *cert. denied*, 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975).

### Possession of Stolen Mail

The trial court instructed the jury that a conviction for a violation of 18 U.S.C. § 1708 requires proof of four elements: (1) that the defendant unlawfully possessed the item stated in the indictment; (2) that the item had been stolen from the mail; (3) that the defendant knew the item was stolen; and (4) that the defendant had the specific intent to possess the item unlawfully. *United States v. Osunegbu*, 822 F.2d 472, 475 (5th Cir.1987).

 Even without the testimony by Sanders about her conversation with Oliver, the evidence was sufficient to permit the jury to conclude that Hall was guilty of possession of stolen mail. A Secret Service agent testified that the government computer records showed that the Connie Sanders check had been duly deposited in the United States mail. A jury can infer that an item was stolen where there is evidence of due mailing and non-receipt. *United States v. Smith*, 631 F.2d 391, 395 (5th Cir.1980). He also testified that, because of the method in which the checks are processed through a machine, the first opportunity for a person to handle a check is after the envelope has been opened. Sanders testified that she never received the check. The presence of Hall's fingerprint on the check shows that he possessed the check at some point after it had been stolen from the mail and taken out of its envelope. Further, because Hall knew Sanders and knew that Sanders was the true owner of the check, the jury could infer that Hall knew that the check was stolen when he possessed it and that he had the intent to possess the check unlawfully. His conviction on the count of possessing stolen mail in the face of this proof does not represent a manifest miscarriage of justice.

### Forgery of a Treasury Check

 Violation of 18 U.S.C. § 495 requires proof that (1) a person put forth a

false writing (2) attempting to circulate it by fraudulent representation that it was genuine (3) with specific intent to defraud. *Smith*, 631 F.2d at 396. Under the aiding and abetting statute, 18 U.S.C. § 2, the government, in addition to proving that the elements of the substantive offense occurred, must also prove that the defendant (1) associated with a criminal venture, (2) participated in the venture as something he wished to bring about, and (3) sought by his actions to make it succeed. *Id.* at 395.

■ Construed most favorably to the jury's verdict, the evidence pertinent to the forgery count showed that Hall had full access to the mail box to which the check was addressed, that Hall's fingerprint was on the back of the check, that the endorsement read "Commie" rather than "Connie" Sanders (as the check was made out) and Hall was one of a few people in a position to know that Connie Sanders' true name was "Commie," and that Hall had approached Oliver for help in getting the Sanders check cashed.

As in any circumstantial evidence case, the evidence adduced at this trial alone does not close a perfect loop of proven guilt. No eyewitness testified that Hall forged "Commie Sanders" on the back of the check. No witness testified that Hall bought the groceries or pocketed the funds over and above the grocery charges which were given to the person presenting the check to the grocery store cashier. Nor did anyone testify that Hall aided or abetted them in such a crime.

What is known is that the government issued a check for $369.55, put it in the United States mail addressed to Connie Sanders, that Commie Sanders never received the check, that Joe Hall shared a mail box with her, that Joe Hall was one of a very few people who knew Connie and Commie were the same person, that Joe Hall handled the check after it was removed from its envelope by someone other than the addressee, that Joe Hall showed the check to Albert Oliver, that Joe Hall asked Albert Oliver if he knew of anyone who could help convert the check to cash, and that the check with a forged endorse-ment in place was presented by someone without authority who fraudulently received value for it.

This proof is distinguishable from the check forgery cases relied on by Hall: *United States v. Lonsdale*, 577 F.2d 923, 926 (5th Cir.1978) ("[t]he only truly damning evidence introduced by the government was, therefore, Lonsdale's fingerprint on the check"); and *United States v. Eddy*, 597 F.2d 430 (5th Cir.1979) (the name of one defendant *sounded* familiar to a person cashing one of the checks, defendants' faces looked familiar but no positive identification was made, one defendant's fingerprints were on the checks, another defendant's handwriting matched one endorsement on one check). *See also United States v. Smith*, 631 F.2d 391 (5th Cir. 1980); *United States v. Hawkins*, 614 F.2d 85 (5th Cir.), *cert. denied*, 446 U.S. 955, 100 S.Ct. 2926, 64 L.Ed.2d 814 (1980); *United States v. Singleton*, 600 F.2d 553 (5th Cir. 1979). These cases were decided before we announced a new standard of review in *Bell, supra.*

The universe of people who could have misappropriated the check, forged this particular endorsement, and defrauded the United States is indeed a small one. Given the reasonable inferences and constructions the jury was entitled to place on this evidence, they were entitled to conclude that Joe Hall stood alone at its center. His counsel's valiant effort to suggest that somehow some unknown friend or relative could have broken the tight little ring of acquisition, possession, knowledge and intent, is not viable. The reasonable inferences, indeed the almost compelling inferences, from the circumstances shown to exist are that Joe Hall took the check from the mail box and either forged the endorsement and negotiated the check or aided and abetted someone who did some or all of the acts necessary to bring the crimes to fruition.

The judgment and conviction of Joe Hall on Counts 1 and 2 are

AFFIRMED.