**Larry GIBSON, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 90–2413.

United States Court of Appeals,
Fifth Circuit.

Nov. 27, 1991.

M. Virginia Stockbridge, Baker & Botts, Houston, Tex. (court appointed), for petitioner-appellant.

Elizabeth Elleson, Christine D. White, Asst. Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, REAVLEY and JONES, Circuit Judges.

REAVLEY, Circuit Judge:

Larry Gibson appeals the district court's dismissal of his application for a writ of habeas corpus claiming that his conviction for burglary of a habitation was a denial of due process because it was not supported by sufficient evidence. Because a rational juror could have found beyond a reasonable doubt that Gibson committed the burglary, we affirm the district court's order denying habeas relief.

## I. BACKGROUND

John Knowlton and his wife left their home in Harris County, Texas between noon and 2:00 p.m. on Friday, February 14, 1986, and returned around 8:00 a.m. on Monday, February 17. Before leaving, the Knowltons checked to ensure that the windows and doors to their home were secured and arranged for a neighbor to collect their mail and newspapers. No one else lived in the Knowltons' home or had permission to enter it while the Knowltons were away.

When they returned, the Knowltons discovered that someone had forced open a rear door of their home and stolen over $26,000 worth of their belongings, including a television, a microwave, guns, cameras, jewelry, and more than 150 pieces of their sterling silver collection. Two silver trays that the Knowltons kept in the lower cabinet of a dining room buffet had been moved during the burglary and left lying on the floor and table.

During their investigation, Houston police officers lifted seven fingerprints that they discovered on the silver trays. Four of these prints were too smudged to be identified, one was clear but not identified, and the remaining two—one from each tray—were conclusively identified as those of the appellant, Larry Gibson. The officers neither noticed or dusted for prints on other items or locations within the house. At the time that they arrested Gibson, the officers searched the homes of Gibson's mother (where Gibson was living) and Gibson's aunt, but did not discover any of the Knowltons' possessions.

A Harris County grand jury indicted Gibson for the first degree felony offense of burglary of a habitation in violation of TEX.PENAL CODE ANN. § 30.02 (West 1989). During the trial before a jury, Knowlton testified that he did not know Gibson and had never seen nor heard of him before. He also testified that he and his wife acquired the silver collection through purchase and inheritance over a period of some sixty years. He did not specifically testify as to how or when they acquired the two trays on which Gibson's prints were found, when they last cleaned the trays, or when they placed the trays in the buffet. The state's fingerprint expert testified that he was unable to say exactly when the prints were placed on the trays, but that the silver surface held fingerprints very well. Gibson did not testify, but offered an alibi defense through the testimony of his mother and daughter.

The jury found Gibson guilty and, in light of two prior convictions, the court sentenced him to fifty years imprisonment. The Texas appellate court affirmed the conviction in an unpublished opinion, *Gibson v. State*, No. 01-86-00968-CR, 1987 WL 13538 (Tex.App.—Houston [1st Dist.], July 2, 1987). The United States District Court dismissed Gibson's application for a writ of habeas corpus and Gibson appeals, arguing as his sole ground that the evidence was insufficient to support the jury's verdict.

## II. STANDARD OF REVIEW

 The Due Process Clause of the Fourteenth Amendment permits the conviction of a criminal defendant only when the state proves every necessary fact "beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). When a defendant seeking federal habeas relief contends that the evidence is insufficient to support a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir.1987).

Gibson concedes that the state has sufficiently proved that *someone* broke into the Knowltons' home, and that the fingerprints found on the two silver trays belong to Gibson. Nevertheless, Gibson contends that the state's evidence is insufficient to connect the placement of the prints with the commission of the crime. We agree with Gibson that the discovery of a defendant's fingerprints at the scene of a crime is sufficient proof of the identity of the offender only if there is sufficient evidence, either direct or circumstantial, from which the jury may reasonably conclude that the defendant left the fingerprints at the time the crime was committed. Thus we must determine whether, on the evidence presented in this case, any rational juror could find beyond a reasonable doubt that Gibson left his fingerprints on the trays while burglarizing the Knowltons' home on the weekend in question. In making this determination we must review the evidence

and the reasonable inferences therefrom in the light most favorable to the state, *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, and give great weight to the state court's determination. *Porretto*, 834 F.2d at 467.

## III. DISCUSSION

Gibson relies on *United States v. Eddy*, 597 F.2d 430 (5th Cir.1979), *United States v. Lonsdale*, 577 F.2d 923 (5th Cir.1978), and *United States v. Stephenson*, 474 F.2d 1353 (5th Cir.1973) to support his contention that the evidence is insufficient in the present case. This court found the evidence in each of these cases insufficient to prove that the defendant's print was left during the commission of the crime with which he was charged. *Eddy*, 597 F.2d at 435 ("There was no proof, direct or circumstantial, introduced which tended to show that these fingerprints were left on the check during the course of uttering it...."); *Lonsdale*, 577 F.2d at 926–27 (same); *Stephenson*, 474 F.2d at 1354–55 (fingerprints on glassine envelopes containing heroin insufficient to prove possession because no evidence that prints placed on envelopes when they contained heroin). But Gibson's reliance on *Eddy*, *Lonsdale*, and *Stephenson* is misplaced because this court reviewed the evidence in those cases under a standard that is not applicable here.

This case involves federal habeas corpus review of a state court conviction, while *Eddy*, *Lonsdale*, and *Stephenson* involved direct appeals from convictions in a federal district court. Formerly, this court subjected direct appeals in cases based solely on circumstantial evidence to a more demanding standard than that used in cases based on direct evidence. Under this stricter standard of review, the court treated the circumstantial evidence as insufficient to support a conviction unless that evidence excluded every reasonable hypothesis of the defendant's innocence. *See Eddy*, 597 F.2d at 432; *Lonsdale*, 577 F.2d at 925; *Stephenson*, 474 F.2d at 1355.[1]

But this court has never used the "hypothesis-of-innocence" standard when reviewing the evidence in a state court conviction challenged through an application for habeas relief. In fact, prior to *Jackson*, federal courts considered habeas corpus petitions grounded on a claim of insufficient evidence by applying the more lenient "no evidence" criterion of *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). In *Jackson*, however, the Court found *Thompson*'s "no evidence" standard "simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt," *Jackson*, 443 U.S. at 320, 99 S.Ct. at 2789, and thus adopted the standard which guides us today: "the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324, 99 S.Ct. at 2791–92.[2]

Because the standard by which we determine whether the government has met its burden in the present case differs so greatly from the standard used in *Eddy*, *Lonsdale*, and *Stephenson*,[3] we do not look to

---

1. For reasons not readily apparent to us, the "hypothesis-of-innocence" standard survived in this circuit even long after the Supreme Court rejected it in *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954). Ultimately, this court joined all the other circuits in rejecting the hypothesis-of-innocence standard in *United States v. Bell*, 678 F.2d 547 (5th Cir.1982), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), and set forth the current, "more precise statement of the law:"

 It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

 *Id.* at 549 & n. 3.

2. Essentially, the combined effect of *Jackson* and *Bell* is to require the same standard of review in this circuit regardless of whether the court is hearing a direct appeal or considering a habeas corpus petition. This was not the case, however, when *Eddy*, *Lonsdale*, and *Stephenson* were decided.

3. This court concluded in *Bell* that the difference between the hypothesis-of-innocence stan-

those cases for guidance. Under *Jackson,* we may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence. The panels reviewing the evidence in *Eddy, Lonsdale,* and *Stephenson* could not.

Gibson points to language in *Eddy* and *Lonsdale* which suggests that, even though the panels recited the hypothesis-of-innocence language, this standard did not control their decisions. *See Eddy,* 597 F.2d at 432 ("a motion for acquittal must be granted when the evidence ... is such that a reasonably minded jury *must* have a reasonable doubt") (quoting *Lonsdale,* 577 F.2d at 925); *Lonsdale,* 577 F.2d at 927 ("the government need not negate all hypotheses explaining the fingerprint in a manner consistent with innocence").[4] But despite these statements, we find language in all three cases that reveals the panels' reliance on the fact that a reasonable hypothesis of innocence did exist. *See Eddy,* 597 F.2d at 434 n. 8 ("*it is possible that* the forged endorsement was made prior to [the time the check was uttered]") (emphasis added); *Lonsdale,* 577 F.2d at 926 ("There are a *potential* multitude of manual manipulations involving the check which would explain the presence of defendant's fingerprints") (emphasis added), at 927 ("His fingerprint *could have been* placed on the check at any time during the seven days prior to the uttering offense....") (emphasis added); *Stephenson,* 474 F.2d at 1354 ("the prints *could have been* placed on the glassine envelopes as long as a year before the seizure") (emphasis added). Under *Jackson,* our concern is whether a reasonable juror could find beyond a reasonable doubt that Gibson's prints were placed on the trays during the commission of the burglary, and hypothetical questions of when Gibson's prints *could have been* placed are not controlling. This court's decisions under the hypothesis-of-innocence standard do not control our analysis in this case.[5]

In addition to this court's decisions in *Eddy, Lonsdale,* and *Stephenson,* Gibson relies on several decisions of other circuits which, though they involved direct appeals from federal convictions, did not employ

dard and the "rational juror" standard set out in *Bell* (and *Jackson* ) "is not merely semantic." *Bell,* 678 F.2d at 549 n. 3. *See United States v. Nelson,* 419 F.2d 1237, 1245 (9th Cir.1969).

**4.** We note the apparent contradiction in *Lonsdale*'s initial statement that "[t]he test of the sufficiency of proof ... is whether the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the accused's innocence," 577 F.2d at 925, and the later statement that "the government need not negate all hypotheses explaining the fingerprint in a manner consistent with innocence." *Id.* at 927.

**5.** In addition to this court's pre-*Bell* decisions, Gibson relies on *Clark v. Procunier,* 755 F.2d 394 (5th Cir.1985) to support his claim of insufficient evidence. In *Clark,* decided under the *Jackson* standard, this court held that evidence of the defendant's palmprint discovered on a safe outside of an auto shop in Austin, Texas was insufficient to support the defendant's conviction for burglary of the shop. *Id.* at 396. A month after the burglary, Clark's wallet was found in Killeen, Texas, containing two auto inspection stickers that were among 108 such stickers taken from the safe. An employee who discovered the burglary testified that the office safe had been moved outside a door that opened onto a parking lot, while an investigating officer testified that the safe was only halfway out the door. *Id.* at 395. Police officers removed a palmprint from the left side of the safe and identified the print as Clark's. This court held this evidence insufficient to support a burglary conviction because the Texas burglary statute required proof that Clark actually *broke into* and *entered* the building. *Id.* at 396. Because the evidence failed to show that the safe (or at least the left side of the safe) was *inside* the building when the print was discovered, the essential element of entry had not been met.

*Clark* is distinguishable from the present case because the issue in *Clark* was that of *entry* and not *identity.* In the present case, there is no question that whoever stole the Knowltons' belongings broke into and entered the home. The question is whether the discovery of Gibson's prints on the trays *inside* the home is sufficient evidence of the *identity* of the thief. As to identity, the *Clark* panel noted that the discovery of the palmprint *combined with* the inference drawn from the stickers found in Clark's wallet was sufficient to "establish[ ] that Clark stole the stickers from the safe." *Id.* Thus, *Clark* supports the argument that fingerprints offered in conjunction with other relevant proof can be sufficient identity evidence. It does not say that fingerprints alone cannot be sufficient evidence.

the hypothesis-of-innocence standard. In these cases, the courts determined the sufficiency of fingerprint evidence by focusing on the inaccessibility of the imprinted object to the defendant prior to the crime. Thus, the evidence was considered sufficient if it supported the jury's reasonable inference that the "objects were generally inaccessible to the defendant and therefore the objects were probably touched during the commission of the crime." *Borum v. United States*, 380 F.2d 595 (D.C.Cir.1967). *See also United States v. Cary*, 470 F.2d 469 (D.C.Cir.1972); *Stevenson v. United States*, 380 F.2d 590 (D.C.Cir.), *cert. denied*, 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967); *United States v. Corso*, 439 F.2d 956, 957 (4th Cir.1971); *United States v. Collon*, 426 F.2d 939, 942 (6th Cir.1970).

In most of these cases, the question of the object's accessibility was easily resolved. In *Collon*, for example, the police discovered one defendant's prints on a four-to-five year old road map found inside a car in which bank robbers had fled. Other than the fact that the defendant matched the general description of a "young, white man of medium height and build," the prints on the map were the only incriminating evidence. 426 F.2d at 941. The Sixth Circuit reversed the judgment of conviction of that defendant because, in the absence of evidence that the map was generally inaccessible to the defendant, there was "not sufficient evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Id.* at 942. Similarly, in *Corso*, the police found the defendant's prints on an empty matchbook cover that had been used to jam open the lock on a door of a burglarized office. The court found the evidence insufficient, doubting the probative value of the prints on such a "readily moveable object." 439 F.2d at 957.

In *Stevenson*, however, the D.C. Circuit found the evidence sufficient because the defendants' prints, determined to be less than two years old, were found on objects that had been in the complainant's house for at least three years. 380 F.2d at 591, 594. In *Cary*, the defendant was convicted of burglarizing an apartment and raping its occupant. The intruder had gained entry by removing a pane of glass from the back door to the apartment, and police discovered the defendant's prints on the inside and outside of the glass, including the area that was covered by molding before the window was removed. The D.C. Circuit found this evidence sufficient. 470 F.2d at 471–72.

*Borum*, 380 F.2d 595, on which Gibson relies most heavily, is a closer case. A jury convicted Borum of housebreaking. The evidence revealed that some person (or persons) entered and ransacked the complainant's home and stole a valuable coin collection. Investigators identified Borum's fingerprints on at least one empty jar that had contained the coins. There was no evidence of when the complainant acquired the jars or whether he ever removed them from his home, and the government's experts testified that the prints could have been on the jars "indefinitely" or for "a period of ... years." *Borum*, 380 F.2d at 596.

Distinguishing *Stevenson*, Chief Judge Bazelon found "no evidence which could account for, or even suggest an inference about, the custody or location of the jars" during the period of years in which Borum's prints could have been placed on the jars. *Id.* In the absence of evidence "indicating that the [jars] were generally inaccessible to Borum," the court found that a reasonable jury must have a reasonable doubt. *Id.* at 596, 597.[6]

---

**6.** Chief Judge Bazelon explained:

The jury may have thought that Borum never had any opportunity to touch the jars outside the house either before or after complainant bought them. But that conclusion would have been based on speculation alone. The jury had no way to determine where the complainant purchased the jars, or how long he had them before June 2, or whether complainant ever removed them from his home, or how long the prints were on the jars. The Government need not negate all inferences consistent with innocence which could arise from the fingerprints. It negated none.

With evidence so inconclusive, a reasonable person must have a reasonable doubt about Borum's guilt.

*Borum*, 380 F.2d at 597 (footnotes omitted).

In his dissent, then Circuit Judge (later Chief Justice) Burger attacked the majority's decision as a denial of the jury's "right to draw reasonable inferences from facts in evidence." 380 F.2d at 600 (Burger, J., dissenting). Judge Burger did not reject the majority's requirement that the government prove that the objects were generally inaccessible, but he argued that:

the trial judge properly concluded that 12 jurors who are directed to apply their experience in life and their common sense might reasonably conclude that glass jars stored in a closet on the second floor of a private home are "generally inaccessible" without direct proof of such by the Government.

*Id.* at 599 n. 3 (Burger, J., dissenting). Finally, Judge Burger argued, "[t]he majority seems to assume that the prosecution's case must answer *all* questions and remove *all* doubts, which, of course, is not the law because that would be impossible; the proof need only satisfy reasonable doubt." *Id.* at 599 (Burger, J., dissenting) (emphasis in original).

■ We accept the *Borum* majority's rule as we understand it: In a criminal case in which the only evidence is the discovery of the defendant's fingerprints at the scene of the crime, a reasonable juror may find guilt beyond a reasonable doubt only if the evidence indicates that the imprinted object was generally inaccessible to the defendant except during the commission of the crime. But regardless of how we might have decided the *Borum* facts under this rule, we find that the circumstances surrounding the discovery of Gibson's fingerprints in the present case are sufficient evidence to support a reasonable juror's finding of guilt beyond a reasonable doubt.

We find support for our conclusion in the Seventh Circuit's recent decision in *United States v. Bush*, 749 F.2d 1227 (7th Cir. 1984), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1771, 84 L.Ed.2d 831 (1985). In that case, a jury convicted Bush of armed bank robbery based on the discovery of Bush's prints on two boxes in an area of the bank restricted to bank employees. The police found the "blue box" on a shelf in the bank's safe and the "white box" on the floor in front of the safe. Bank employees testified that they used the blue box to catch night deposits dropped into the safe from an exterior chute and the white box to store blank deposit slips. *Id.* at 1229. Because the bank kept the white box, which it had received in the mail from another bank, on the top shelf in the safe near the blue box, it was clear that the robber had either moved or dropped the white box during the robbery. *Id.* The Seventh Circuit considered the majority and dissenting opinions in *Borum*, and found this evidence sufficient to support Bush's conviction:

It is, of course, theoretically possible that appellant may have handled each of the boxes on some earlier occasions between their manufacture and their receipt and use by the savings and loan association. The Government did not prove that earlier contact was impossible. We conclude, however, that enough was shown so that the mere possibility does not compel, as a matter of law, a reasonable doubt.

*Id.* at 1229.[7]

■ It is clear from the evidence in the present case that, while stealing the Knowltons' silverware and other belongings, someone moved two silver trays from inside a buffet cabinet, where the Knowltons kept them as part of a collection they had acquired over the course of sixty years. Investigators discovered on each of those trays the fingerprints of Larry Gibson, who had never been permitted inside the Knowltons' home. From this evidence, the jury might conclude either: (1) Both trays were accessible to Gibson at some time prior to the time of the burglary, Gibson handled the trays on that occasion, and the Knowltons did not polish or otherwise clean the trays so as to remove Gibson's prints; or (2) The trays were general-

---

7. In his concurring opinion in *Bush*, Judge Coffey considered the court's reference to "[t]he hypertechnical *Borum* analysis" unnecessary, and stated: "I would cast [the *Borum* decision] afloat on the troubled waters of the 60's, ever to be forgotten in our annals of legal history, as a time when far too many of our courts were concerned with expanding the rights of the criminal defendant." 749 F.2d at 1234 (Coffey, J. concurring).

ly inaccessible to Gibson at any time prior to the break-in and therefore Gibson handled them while burglarizing the Knowltons' home. We believe the jury's choice of the second inference is reasonable under the circumstances of this case. In the cases on which Gibson relies, the juries' findings that a road map, a matchbook, and a glass jar were inaccessible to the defendant may have been based on impermissible speculation not supported by the evidence. But this jury's inference that two trays kept in a dining room buffet as part of an expensive silver collection were generally inaccessible to Gibson is reasonable and thus permissible. Like the boxes in *Bush,* the state did not prove that earlier contact with the trays was impossible, but the failure of the evidence to negate the hypotheses consistent with Gibson's innocence is irrelevant: "A jury is free to choose among reasonable constructions of the evidence." *Bell,* 678 F.2d at 549.

Finally, Gibson's warning that the effect of our decision today is to "hold that anyone who touches anything which is found later at the scene of a crime may be convicted" is unfounded. *See Borum,* 380 F.2d at 597. Our holding, like *Borum's,* is that such a conviction may stand only when the circumstances surrounding the discovery of the accused's prints sufficiently indicate that the imprinted object was generally inaccessible to the defendant at any time other than when the crime was committed. Having found such circumstances in this case, we cannot say that a reasonable juror must have a reasonable doubt about Gibson's guilt. We give great weight to the state court's determination: a properly instructed jury was convinced of Gibson's guilt beyond a reasonable doubt, and "we can require no more." *Holland,* 348 U.S. at 140, 75 S.Ct. at 138.

The judgment denying the writ of habeas corpus is AFFIRMED.