959 F.2d 1307
 35 Fed. R. Evid. Serv. 1091
 Kenneth FOY, Petitioner-Appellant,
v.
J.F. DONNELLY, in his official capacity as Warden of the
Washington Correctional Institute and William J.
Guste, Attorney General, State of
Louisiana, Respondents-Appellees.
 No. 91-3214.
 United States Court of Appeals,
Fifth Circuit.
 April 21, 1992.
Rehearing Denied May 21, 1992.
 
 1
 Richard C. Stanley, Stone, Pigman, Walther, Wittmann & Hutchinson, Marc David Winsberg, New Orleans, for petitioner-appellant.
 
 
 2
 Hans P. Sinha, David Lawrence Arena, Dist. Atty., Lisa A. McLachlan, Asst. Dist. Atty., New Orleans, for Donnelly.
 
 
 3
 Appeal from the United States District Court for the Eastern District of Louisiana.
 
 
 4
 Before POLITZ, Chief Judge, SMITH, Circuit Judge, and FITZWATER,* District Judge.
 
 FITZWATER, District Judge:
 
 5
 In this appeal from a judgment denying habeas relief, we determine whether the content of a non-testifying accomplice's confession was disclosed to the jury to the extent necessary to violate petitioner's Sixth Amendment Confrontation Clause rights. We also decide whether the evidence is sufficient to sustain a conviction for armed robbery and whether the state prosecutor engaged in misconduct to the degree necessary to warrant collateral relief.
 
 
 6
 * Petitioner Kenneth Foy ("Foy") and John Shelbia ("Shelbia") were charged by bill of information in Louisiana state court with two counts of armed robbery. Shelbia pleaded guilty and Foy went to trial.
 
 
 7
 On March 27, 1985 Shelbia entered a Church's Fried Chicken restaurant located at Washington Avenue in New Orleans after closing.[1] He robbed the establishment between 12:00 midnight and 1:30 a.m., obtaining several hundred dollars in cash. Shelbia put a gun to the head of a restaurant employee, warning her he would kill her if she did not give him the money. Shelbia then made her and two other employees lie down on the floor. Therefore, none of the employees could see which way Shelbia went when he departed following the robbery, or whether he left on foot or by motor vehicle. Two of the three employees (the only two who testified at trial) expressly stated that Shelbia--not Foy--was the man who robbed the Washington Avenue restaurant.
 
 
 8
 An employee reported the robbery to the New Orleans Police Department. Officer Mel Gerretts ("Officer Gerretts"), who was assigned the nightwatch in robbery, responded to the report. He interviewed the witnesses, obtaining a physical description of Shelbia and learning $694.00 dollars ($674.00 in bills and $20 in quarters) had been taken.
 
 
 9
 Officer Gerretts departed the scene and went to a Church's restaurant at another location. This store was closed and everyone was gone, so he proceeded to the Church's Fried Chicken restaurant located at Earhart and Monroe streets. As it turned out, Shelbia had gone there too, in order to rob the assistant manager at gunpoint. There were five employees at the Earhart location. At trial, the assistant manager positively identified Shelbia as the lone gunman. No witness identified Foy as entering the premises.
 
 
 10
 No employee could testify how Shelbia left the establishment because he forced them into the store's cooler. But Officer Gerretts saw the getaway. As he passed the Earhart Street store he observed a green and white Ford parked directly across the street. A subject--whom Officer Gerretts later identified as Foy[2]--was sitting behind the wheel. The officer went a block down the street, parked with his lights out, and observed the car. About two minutes later, the driver illuminated the car lights and pulled his vehicle directly in front of the Church's Fried Chicken restaurant. A suspect--later identified as Shelbia--ran out the back of the store and jumped in the car before it sped off.
 
 
 11
 Officer Gerretts pursued the fleeing automobile, activating his lights and siren. He also radioed the dispatcher that he was giving chase, relaying pertinent information concerning the suspects' vehicle. Foy eventually lost control of the automobile. When the car came to a stop, Foy and Shelbia exited and started running. A back-up police unit of two officers arrived at the scene at this moment. One officer pursued Foy on foot and the other ran after Shelbia. Officer Gerretts remained in his squad car and chased Foy for about one-quarter block. As he ran, Foy looked back at Officer Gerretts. Because Foy was not watching where he was going, he ran into a fence located on a parking lot.
 
 
 12
 When Foy hit the fence he dropped to the ground. A gun fell by his side.[3] Officer Gerretts jumped out of his squad car, pulled his service revolver, and ordered Foy to halt and not to move. Foy hesitated without moving for about five to ten seconds and looked at Officer Gerretts. The officer again instructed him not to move, then Foy suddenly bolted and ran down the highway.[4] Officer Gerretts and a backup officer pursued Foy, but he was able to escape.
 
 
 13
 Officer Gerretts then placed Shelbia under arrest and called for a crime lab vehicle to recover and process the evidence. He returned Shelbia to the Earhart store where the witnesses identified him. The officer informed Shelbia he was under arrest for armed robbery and advised him of his rights. Shelbia told Officer Gerretts he wanted to give a statement.
 
 
 14
 A crime scene technician collected money from the getaway vehicle as well as the gun that Foy dropped by the fence. After the police obtained a search warrant, another officer conducted a search of the vehicle. From the trunk the officer removed a large amount of U.S. currency, two rolls of quarters, and a shirt. The currency totaled $674.00. From the floorboard of the vehicle an officer collected $132.00 and $456.00 in currency and coin.
 
 
 15
 Officer Gerretts applied for a warrant to arrest Foy and presented it to a magistrate judge, who issued the warrant. The officer also checked the serial number of the handgun and determined it was registered to Harold Foy, petitioner Foy's father. Officer Gerretts verified the automobile registration on the getaway car and determined the vehicle was registered to Thelma J. Foy, petitioner's mother.
 
 
 16
 A jury convicted Foy of two counts of armed robbery, following which he was sentenced to concurrent 20-year terms of imprisonment. He appealed the convictions directly, challenging the sufficiency of the evidence and the state's use at trial of Shelbia's confession. The Louisiana court of appeal affirmed Foy's convictions. See State v. Foy, 529 So.2d 168 (La.Ct.App.1988) (table). Foy did not seek review in the Louisiana Supreme Court.
 
 
 17
 Foy thereafter sought collateral relief in the Louisiana courts, presenting the same two arguments as well as a third ground based upon prosecutorial misconduct. The trial court and intermediate court of appeal denied relief, as did the Louisiana Supreme Court, see State ex rel. Foy v. Donnelly, 560 So.2d 6 (La.1990), with two justices voting to grant the writ. Having exhausted his state remedies, Foy filed a habeas petition in U.S. District Court seeking relief pursuant to 28 U.S.C. § 2254. The district judge denied the application but granted a certificate of probable cause. This appeal followed.
 
 II
 
 18
 Foy first challenges his convictions on the ground that the state violated his Sixth Amendment right of confrontation by using Shelbia's confession.
 
 
 19
 * It is a fair inference from the trial record that the state's initial strategy for obtaining a conviction of Foy was to introduce evidence establishing that Shelbia was the individual who entered each Church's Fried Chicken location and then call Shelbia as a witness to inculpate Foy. The state would then corroborate Shelbia's testimony with evidence that Foy was the getaway driver in the second robbery, that he was carrying a handgun registered to his father and driving an automobile registered to his mother, and that physical evidence found in the abandoned vehicle--in currency and coin--generally matched that taken during the two robberies. This approach went awry, however, when Shelbia balked and refused to testify.[5] The state then shifted gears, in a manner that Foy now contends violated his Confrontation Clause rights. After presenting as witnesses the individuals who were robbed at gunpoint at the two locations, others who were present during the robberies, and a crime scene technician, the state called Shelbia as a witness. When he refused to testify, the state called Officer Craig Rodreigue ("Rodreigue") to the stand. He testified he was assigned to the robbery division on March 27, 1985 and was present when Shelbia gave a "confession." Foy's counsel objected to this line of questioning in an unreported bench conference and the trial court gave Foy a running objection.
 
 
 20
 In a series of several questions, seven of which contained the word "confession," the prosecutor inquired of Officer Rodreigue whether: Shelbia had given a confession in the officer's presence; officers present had handguns during the taking of the confession; Shelbia was forced, threatened, or intimidated during the taking of the confession; Shelbia was promised anything if he gave a confession; an officer told Shelbia "things will go easier on you" if he gave a confession; and whether the confession was taken down and recorded or typed out. Officer Rodreigue did not use the term "confession" in his answers to these questions or in the balance of his testimony. The prosecutor also referred to the document in another series of questions as a "statement." Officer Rodreigue then made an in-court identification of Shelbia as the individual who gave the officers the statement. The content of the "confession" or "statement" was not disclosed to the jury.
 
 
 21
 After next calling an officer who searched the trunk of the getaway car, and recalling the crime scene technician, the state put on Officer Gerretts. The state first elicited testimony concerning the officer's response to the Washington Avenue robbery, brief stakeout at the Earhart location, pursuit of Foy and Shelbia, individual chase of and encounter with Foy, and apprehension of Shelbia. The state then posed the following question that Foy contends violated his Sixth Amendment rights:
 
 
 22
 Q. All right. Now, subsequent to your investigation and after your taking of this particular statement did you make an arrest warrant out for Kenneth Foy?
 
 
 23
 A. Yes, sir, I did.
 
 
 24
 Foy argues his right of confrontation was abridged when the state made repeated use of the term "confession," linked the issuance of an arrest warrant for Foy to Shelbia's statement, and emphasized to the jury in closing argument that Foy was "just as guilty as John Shelbia."[6] He urges the state has failed to offer a plausible basis for this trial tactic except as an impermissible means to establish Foy's guilt from Shelbia's own words.
 
 B
 
 25
 When an accomplice does not testify at trial, the Sixth Amendment Confrontation Clause prohibits the prosecution from using the accomplice's confession against a defendant, unless the prosecution successfully rebuts the weighty presumption of unreliability that attaches to such evidence. See Lee v. Illinois, 476 U.S. 530, 543, 546, 106 S.Ct. 2056, 2063, 2065, 90 L.Ed.2d 514 (1986); Douglas v. Alabama, 380 U.S. 415, 419, 85 S.Ct. 1074, 1077, 13 L.Ed.2d 934 (1965). A primary interest secured by the Confrontation Clause is the right of cross-examination. Id. at 418, 85 S.Ct. at 1076. When a confession incriminates the defendant, but the one who has confessed is not available as a witness, the critical right of cross-examination secured by the Confrontation Clause is abridged. See id. at 419, 85 S.Ct. at 1077. Thus in a joint trial, the Confrontation Clause prevents the prosecution from introducing a codefendant's confession inculpating a defendant when the codefendant does not testify. Bruton v. United States, 391 U.S. 123, 127-28, 88 S.Ct. 1620, 1623, 20 L.Ed.2d 476 (1968). Under such circumstances the codefendant is not available for cross-examination. The defendant against whom the confession is used is deprived of Sixth Amendment rights. Id. at 126, 88 S.Ct. at 1622.
 
 
 26
 "The right to confront and cross-examine witnesses is primarily a functional right that promotes reliability in criminal trials." Lee, 476 U.S. at 540, 106 S.Ct. at 2062. Confrontation ensures that witnesses will give statements under oath, thereby impressing them with the seriousness of the matter and guarding against the lie by the possibility of the penalty of perjury. Confrontation also forces witnesses to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth," and permits the jury who decides a defendant's fate to observe the demeanor of the witness making the statement, thus aiding the jury in assessing credibility. Id. (quoting California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970)). "[T]his truth-finding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." Id. at 541, 106 S.Ct. at 2062.
 
 
 27
 Moreover, "the arrest statements of a codefendant have traditionally been viewed with special suspicion" due to the codefendant's "strong motivation to implicate the defendant and to exonerate himself." Id. A codefendant's statements about what the defendant said or did are thus considered less credible than ordinary hearsay evidence. Id. (citing Bruton, 391 U.S. at 141, 88 S.Ct. at 1631 (White, J., dissenting)). It is a "basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." Id.
 
 
 28
 Our question is whether the state's references to a confession, without disclosing its content, and its inquiry whether an arrest warrant followed the investigation and statement, constitute use of the confession in violation of the Confrontation Clause.[7]
 
 
 29
 We have located no cases that establish a bright line rule for determining when the confession of a non-testifying accomplice has been used against a defendant being tried alone. While we recognize that Bruton-type cases do not supply a perfect model, we find appropriate guidance from them.[8]
 
 
 30
 In analyzing Bruton claims, we have held it to be critical to determine whether the out-of-court statement "clearly implicates the co-defendant." United States v. Espinoza Seanez, 862 F.2d 526, 534 (5th Cir.1988) (quoting United States v. Basey, 816 F.2d 980, 1005 (5th Cir.1987)). If it does not, "no serious Bruton issue is presented." Id. (quoting Basey, 816 F.2d at 1005). Moreover, we have "held consistently that the Bruton rule is not violated unless a co-defendant's statement directly alludes to the complaining defendant. This is true, even if the evidence makes it apparent that the defendant was implicated by some indirect references." Id. (quoting United States v. Webster, 734 F.2d 1048, 1054 n. 6 (5th Cir.1984), cert. denied, 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (citations omitted)). This jurisprudence is followed in other circuits. See id. (collecting cases).
 
 
 31
 We think the standards we have adopted in the Bruton context appropriately guide us in the present case. Confrontation Clause rights, including the right of cross-examination, are prompted by testimony that inculpates a defendant. That which is neither accusatory nor incriminatory, because it is not disclosed to the jury, cannot seriously be thought to trigger Sixth Amendment concerns. There is no need to test and undermine that which does not at least clearly imply guilt. The significant rights conferred by the Sixth Amendment never come into play.
 
 
 32
 In the present case the content of the Shelbia confession was not disclosed to such an extent that it clearly implicated Foy or directly alluded to him. The prosecutor used the term "confession" on several occasions but did not reveal what Shelbia had said. He did not suggest in this series of questions that Shelbia had implicated Foy.
 
 
 33
 In the sole exchange that Foy can say directly links the confession to him, the testifying officer stated he made an arrest warrant out for Foy subsequent to his investigation and after taking "this particular statement." But in the context of Officer Gerretts' trial testimony, this did not inexorably translate Shelbia's confession into an allusion to Foy's complicity. By this point in the trial, Officer Gerretts had already detailed his investigation of the Washington Avenue robbery, the investigation and pursuit of Foy and Shelbia following the Earhart Street robbery, the encounter with Foy (in which the officer testified he viewed Foy's face during portions of one minute), and the apprehension of Shelbia. The testimony concerning the officer's investigation, when considered together with the application for an arrest warrant, permitted the jury to connect what Officer Gerretts found from his own detective work--rather than Shelbia's statement--with the arrest warrant application. Because of the sequence in which the officer's testimony was developed, there were myriad reasons why Shelbia's statement could be thought to have pertained to his participation alone, and yet when coupled with Officer Gerretts' investigation of Foy and Shelbia, to have served as a basis to arrest Foy.
 
 
 34
 We hold that the content of Shelbia's confession was not disclosed so that it clearly implicated Foy or directly alluded to him. No Sixth Amendment violation has been shown.
 
 III
 
 35
 Foy next seeks habeas relief on the ground that the evidence is constitutionally insufficient to prove him guilty of the first robbery.
 
 
 36
 * A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). "When a defendant seeking federal habeas relief contends that the evidence is insufficient to support a state court conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " Gibson v. Collins, 947 F.2d 780, 781 (5th Cir.1991) (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789) (emphasis in original)). We apply this standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 323 n. 16, 99 S.Ct. at 2792 n. 16.[9] And we "give great weight to the state court's determination." Gibson, 947 F.2d at 782, 786; Porretto v. Stalder, 834 F.2d 461, 467 (5th Cir.1987) (Louisiana Supreme Court's review of evidence for sufficiency to prove guilt "entitled to great weight in a federal habeas review").
 
 B
 
 37
 In the second count of the bill of information,[10] the state charged that Foy, "while armed with a dangerous weapon, to wit: a gun, robbed LABLANCHE RICHARD of six hundred ninety four dollars ($694.00) in U.S. Currency." Under Louisiana law, armed robbery is defined, in pertinent part, as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.Rev.Stat.Ann. § 14:64 (West 1986); see State v. Smith, 450 So.2d 714, 715 (La.Ct.App.1984).
 
 
 38
 It is clear the state did not prove Foy actually robbed Richard at gunpoint. Richard testified Shelbia robbed her and stated affirmatively that Foy was not the man who entered the restaurant. But Louisiana law provides that a defendant may also be guilty of a crime under the law of principals, which provides:
 
 
 39
 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit a crime, are principals.
 
 
 40
 La.Rev.Stat.Ann. § 14:24 (West 1986).
 
 
 41
 Under the law of principals, a defendant can be found guilty of armed robbery if he served as a principal of the crime by aiding and abetting, directly or indirectly counseling, or procuring another to commit a crime. Id.; State v. Peters, 553 So.2d 1026, 1028 (La.Ct.App.1989); State v. Smith, 513 So.2d 438, 444-45 (La.Ct.App. 1987); Smith, 450 So.2d at 716. The defendant need not personally have held a weapon to be guilty as a principal of armed robbery. Peters, 553 So.2d at 1028; State v. Wells, 522 So.2d 1163, 1164-65 (La.Ct.App.), writ denied, 523 So.2d 1336 (La.1988); State v. Joseph, 463 So.2d 1014, 1017-18 (La.Ct.App.), writ denied, 466 So.2d 471 (La.1985). He need not actually have performed the taking. Smith, 513 So.2d at 445. And he need neither have directed the commission of the crime nor have been present at the crime scene. Whitmore v. Maggio, 742 F.2d 230, 232 (5th Cir.1984). But under La.Rev.Stat.Ann. § 14:24 (West 1986), not all principals are automatically guilty of the same grade of offense. State v. West, 568 So.2d 1019, 1022 (La.1990). "One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial." Id. (citation omitted); Smith, 450 So.2d at 717.
 
 
 42
 To convict Foy as a principal of armed robbery[11] the state must have proved the elements of the offense and established that Foy intentionally aided and abetted, or directly or indirectly counseled, or procured Shelbia to commit the crime. See Smith, 513 So.2d at 445 (evidence was sufficient to permit jury to find defendant intended to aid and abet armed robbery, thus defendant could have been found guilty as a principal; uncoerced presence at robbery amounts to very strong showing of intent). The state contends the following evidence permitted the jury to convict Foy of this first robbery as a principal: the currency taken in the first robbery was discovered in the getaway car that Foy drove from the scene of the second robbery; the automobile Foy operated was registered to his mother; Foy's alibi witnesses could not place him at home during the time period in which the first robbery occurred; the gun that Foy dropped after fleeing from the second robbery was registered to his father, who testified he normally locked his gun in the car trunk; and both Foy and his wife had been employees of Church's Fried Chicken outlets and Foy had been an assistant manager and thus familiar with procedures followed at closing time.[12]
 
 
 43
 The Louisiana court of appeal summarily dismissed the insufficiency of the evidence claim on direct appeal. The state habeas district court noted the summary dismissal of the claim on collateral review and otherwise denied the argument as lacking merit. The court of appeal on habeas review held the insufficiency of the evidence claim had been "fully litigated on appeal [and] should not be relitigated in post conviction relief proceedings." While we confess the question is a close one, when we evaluate the proof adduced at trial under the appropriate standard, and accord great weight to the direct and habeas review of the Louisiana state courts, we are persuaded the evidence is sufficient to have permitted a rational jury to find Foy was a principal.
 
 
 44
 The witnesses to the first robbery identified Shelbia as the sole perpetrator, and described his singular criminal conduct. There is no suggestion by these witnesses that Shelbia fled by automobile or had an accomplice. Cf. Little v. Butler, 848 F.2d 73, 75-76 (5th Cir.1988) (habeas case) (conviction as principal to attempted armed robbery was supported by evidence that petitioner sent youths to rob store and acted as lookout); Smith, 513 So.2d at 445 (evidence sufficient to convict principal of armed robbery or of lesser included offense who was shown to have acted as a lookout of convenience store robberies). The state must therefore rely on circumstantial evidence discovered after the second robbery to link Foy to the first robbery and to establish that his participation was intentional so that he became a principal.
 
 
 45
 We recognize that most of these facts can be explained on the basis of Foy's role in the second robbery. His use of his mother's automobile as the getaway car, the possession of his father's gun, and his experience as a Church's Fried Chicken employee, are equally consistent with participation in only the second robbery as opposed to both crimes. A jury could reasonably have found that Shelbia alone committed the first crime and thereafter met up with Foy, who then aided and abetted the second offense. It also could justifiably have concluded that Foy accompanied Shelbia while Shelbia committed the first robbery, but did not intentionally aid and abet, directly or indirectly counsel, or procure the robbery.
 
 
 46
 Nevertheless, "[u]nder Jackson, we may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." Gibson, 947 F.2d at 783. We must deny collateral relief if, after viewing the evidence favorably to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime. And our cases require that we give great weight to decisions of state courts that have held the evidence to be sufficient.
 
 
 47
 A rational jury could have found Foy guilty beyond a reasonable doubt as a principal of the first armed robbery. Shelbia held up two Church's Fried Chicken restaurants at gunpoint. The robberies occurred within relatively close proximity in time. Foy, who had been a Church's employee, could not account for his whereabouts during the first robbery. He played an integral role in the second robbery by operating the getaway car. The direct evidence pertaining to the first robbery is not inconsistent with the corresponding direct evidence regarding the second robbery. Consonant with the first robbery, Shelbia acted as the lone gunman in the second robbery. Shelbia somehow got from the scene of the first robbery to the scene of the second. The vehicle Foy drove is the only one connected with either crime. Following the second robbery, the currency and coin taken from the first robbery were found in the trunk of Foy's car. Yet the proceeds of the second robbery were still on the floorboard, permitting the inference that Shelbia and Foy deliberately concealed the proceeds of the first robbery after it was committed, and that Foy did more than enter the criminal episode after the first crime was complete or merely associate with Shelbia in a non-criminal manner.
 
 
 48
 We conclude that a rational jury could have found Foy guilty beyond a reasonable doubt of the first robbery. And in this admittedly close case, we must give great weight to the state court decisions upholding the verdict. The district court correctly denied habeas relief with respect to Foy's conviction for the first robbery.
 
 IV
 
 49
 Foy also seeks relief on the basis of prosecutorial misconduct. He contends the prosecutor committed acts that denied him a fair trial, including belittling defense counsel's objections, asking unwarranted questions that suggested Foy's family was involved in the crime, referring to facts outside the record, and improperly urging the jury to convict for reasons other than upon the evidence in the case.
 
 
 50
 * Prosecutorial misconduct implicates due process concerns. A prosecutor's statements may violate due process in two ways. They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a "generic substantive due process" violation. Rogers v. Lynaugh, 848 F.2d 606, 608 (5th Cir.1988). We first determine the type or types of misconduct alleged, because "[t]he case law supplies a different test for each kind of due process violation." Id.
 
 
 51
 Foy does not suggest that the prosecutor violated a specific constitutional right. We therefore ask whether his comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974)); Rogers, 848 F.2d at 608. Under this test, a prosecutor's misconduct may render a defendant's trial less than perfect, but the imperfection must have rendered the trial unfair in order to be constitutional error. Rogers, 848 F.2d at 608-09. A trial is fundamentally unfair if "there is a reasonable probability that the verdict might have been different had the trial been properly conducted." Id. at 609 (quoting Kirkpatrick v. Blackburn, 777 F.2d 272, 278-79 (5th Cir.1985) (footnote omitted), cert. denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986)). In the habeas corpus context, our review is narrow. See Donnelly, 416 U.S. at 642, 94 S.Ct. at 1871; Smith v. Black, 904 F.2d 950, 972 (5th Cir.1990).
 
 
 52
 We do not approve of some of the prosecutor's comments, but we cannot say that, taken as a whole and viewed in the context of the entire trial, they accumulate to a denial of due process.
 
 B
 
 53
 * Foy first contends the state belittled his counsel's objections throughout the trial. At one point, the prosecutor asked a witness how much money had been seized in the second robbery. No foundation had been laid to determine the witness' personal knowledge about the amount. Foy's counsel objected and the court sustained the objection, telling the prosecutor to lay the proper foundation. The prosecutor responded, "All right. Let's cross all the T[']s and dot all the I's for [defense counsel]." During closing argument, the prosecutor revisited this theme, complaining in general about defense objections throughout the trial.
 
 
 54
 We discern no impropriety that warrants habeas relief. The prosecutor's argument was offered in response to defense counsel's closing argument raising the issue and explaining the reasons for his objections. Moreover, the record reflects that each time the prosecutor complained about defense objections, the judge immediately stepped in and corrected or warned the prosecutor in the jury's presence. Assuming the prosecutor's comments were improper, we cannot say they infected the trial with unfairness.
 
 2
 
 55
 Foy next complains of improper witness questioning, but this complaint is easily dismissed. According to Foy, the prosecutor tried to implicate Foy's family in the robberies through his cross-examination of Foy's brother and father. The prosecutor asked Foy's brother if he was at the scene of the first robbery. Foy interprets the questioning of his brother as an attempt to place him at the scene of the crimes and thus implicate his brother as an accomplice. A fair reading of the record, however, establishes the prosecutor was merely demonstrating that the brother was not at the scenes of the crimes and therefore did not know what had occurred.
 
 
 56
 In questioning Foy's father, the prosecutor made the statement that he was attempting to establish "that this family [was] all connected to the operation." Foy complains that this statement was an attempt to link the family in a conspiracy to commit the robberies, unsupported by any evidence in the record. Read in context, however, the word "operation" can fairly be understood to refer to Church's Fried Chicken, and not to the robberies. The prosecutor was merely establishing that Foy had special knowledge of the company's closing procedures. The record reflects that Foy had worked at Church's Fried Chicken as a manager or assistant manager, and that several of his family members worked for the company. The prosecutor's questioning of the witnesses was not improper.
 
 
 57
 While addressing the alibi defense presented by Foy's witnesses, the prosecutor stated the family "made my case," and "[t]hey put the hat on him." To the extent such statements included the prosecutor's personal opinion about the merits of his case, they were impermissible. See United States v. Cantu, 876 F.2d 1134, 1138 (5th Cir.1989) (direct appeal). But a prosecutor can indicate his opinion or knowledge if it is clear the conclusions he is urging are to be drawn from the evidence. Lavernia v. Lynaugh, 845 F.2d 493, 497 (5th Cir.1988). In making his closing argument, the prosecutor was emphasizing the weakness of Foy's alibi defense. The argument was not improper.
 
 3
 
 58
 Foy's third example of prosecutorial misconduct alleges improper argument about information not in evidence. While arguing about Foy's identification, the prosecutor improperly claimed the police "ran his name through the computer" and found "Kenneth Foy, Negro Male." Foy asserts no such testimony existed and that the statement unfairly implied Foy had a criminal history. The state counters that use of a computer was in evidence and they point to Officer Gerretts' testimony about tracing the father's gun and the automobile registration to Foy's mother. The record contains no evidence, however, of a computer search revealing Foy's identity. The statement mischaracterized the evidence presented. Defense counsel immediately objected, and argued to the jury that no such evidence had been presented. The prosecutor then changed his argument to refer to the use of computers to trace the gun and automobile.
 
 
 59
 Nonetheless, the prosecutor's statement did not equate to a due process violation. The prejudice Foy alleges is that the state implied Foy had a criminal history. Foy's criminal history had already been introduced at trial, however, through a certified copy of his previous convictions for possession of marihuana and for battery. This evidence was adduced to impeach the credibility of a character witness for Foy, without defense objection.
 
 4
 
 60
 Foy also challenges the following statement made by the prosecutor in closing argument. He contends it misstated the burden of proof and injected the prosecutor's personal belief that Foy was guilty:
 
 
 61
 Listen, I'm not going to try to insult your intelligence, or play games with you, or anything like that. I produced the evidence, I produced the testimony, it's clear and convincing that this man is guilty. If you want to vote not guilty, fine. But when you vote not guilty give me enough time to move out of New Orleans.
 
 
 62
 We divide this contention into two parts. The first is whether the prosecutor acted improperly when he argued to the jury that "it's clear and convincing that this man is guilty." We do not find that the prosecutor misstated the burden of proof, as Foy now contends. Although it was the finale, this was but a portion of the prosecutor's argument in which he attempted to persuade the jury of the defendant's guilt. He used a term that judges and lawyers understand to be a different proof burden than applies in a criminal case. But he did not tell the jury that clear and convincing evidence is enough to return a verdict of guilty.
 
 
 63
 This part of the closing argument was preceded, moreover, by other instances in which the prosecutor argued there was "proof positive" of Foy's guilt and that the state "proved positive" that Foy was a principal. The prosecutor also said, "Proof beyond a reasonable doubt. I will submit to you that we have proved it," and elsewhere mentioned proof beyond a reasonable doubt in his argument. We hold the single reference to clear and convincing evidence, in the context presented, did not misstate the burden of proof and, if it did, would not warrant federal habeas relief.[13]
 
 
 64
 We next consider the portion of the argument, which we find to be clearly improper, in which the prosecutor told the jury if it voted to acquit Foy it should "give [the prosecutor] enough time to move out of New Orleans." Our question on habeas review is not whether the argument warrants our strong rebuke, but whether the statement, in light of the entire trial, demonstrates a due process violation. See Bradford v. Whitley, 953 F.2d 1008, 1013 (5th Cir.1992). We conclude it does not, because the argument did not render the trial unfair. See Rogers, 848 F.2d at 608-09 (imperfection in prosecutor's conduct must have rendered the trial unfair).
 
 5
 
 65
 Finally, Foy argues the cumulative effect of the prosecutor's comments deprived him of a fair trial. We reject this contention because our review of the entire record convinces us Foy was not deprived of a fair trial by the prosecutor's conduct.
 
 
 66
 * * * * * *
 
 
 67
 The district court correctly denied federal habeas relief. Its judgment is in all respects
 
 
 68
 AFFIRMED.
 
 
 
 *
 District Judge of the Northern District of Texas, sitting by designation
 
 
 [1]
 We recount the evidence in the light most favorable to the state. See Whitmore v. Maggio, 742 F.2d 230, 232 (5th Cir.1984) (federal habeas court considers all evidence in the light most favorable to prosecution when determining whether evidence adduced in state court trial is sufficient to sustain conviction)
 
 
 [2]
 Officer Gerretts positively identified Foy at trial
 
 
 [3]
 Officer Gerretts testified at trial that he knew Foy had the gun in his possession when he dropped it
 
 
 [4]
 Officer Gerretts testified the approximate time lapse from the point Foy was running in front of his squad car until he got up and ran away was approximately one minute
 
 
 [5]
 Shelbia did appear in court to be identified by witnesses as the lone robber of the two stores and as the individual who gave a statement regarding the robberies
 
 
 [6]
 We accord little significance to this statement. The prosecutor advanced this argument to explain that under Louisiana law, a principal is equally guilty of an offense. It is apparent from the record that the state intended no specific reference to Shelbia's confession. We do not, therefore, address this contention further
 
 
 [7]
 On the basis of Douglas v. Alabama, Foy urges that it "is of no moment" that the jury did not have before it the details of Shelbia's confession. Foy argues the confession in Douglas was not admitted in evidence and nevertheless was held to violate the Sixth Amendment. We reject this interpretation of Douglas. The content of the confession was clearly disclosed to the jury, even though not admitted in evidence, under the guise of refreshing the witness' recollection. 380 U.S. at 416, 85 S.Ct. at 1075
 
 
 [8]
 Bruton cases do not provide a completely analogous rule because in those instances the confession is always offered against the codefendant. It is the extent to which the non-testifying codefendant's confession inculpates the defendant that makes Bruton's salutary rule relevant. In single defendant cases, the non-testifying accomplice's confession is always used against the one defendant on trial. There is no diffusive effect that flows from offering the confession against a codefendant
 
 
 [9]
 We do not, however, apply the Louisiana circumstantial evidence standard--to the extent it is more onerous--that requires the evidence to be inconsistent with every reasonable hypothesis of innocence. See Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). "[O]nly Jackson need be satisfied, even if state law would impose a more demanding standard of proof." Id. (footnote omitted). Cf. State v. Smith, 513 So.2d 438, 444 (La.Ct.App.1987) (Louisiana circumstantial evidence standard set out in La.Rev.Stat.Ann. § 15:438 (West 1981) "is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of a crime. Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt" (citations omitted)). See Knox v. Butler, 884 F.2d 849, 856 (5th Cir.1989) ("We are not persuaded that Louisiana [circumstantial evidence] law truly imposes a higher standard of proof" (footnote omitted)), cert. denied, 494 U.S. 1088, 110 S.Ct. 1828, 108 L.Ed.2d 957 (1990)
 
 
 [10]
 In the state's brief, and even in the state habeas district court judgment, the first robbery is referred to as being charged in count one of the bill of information. We note that the first robbery is charged in the second count
 
 
 [11]
 We do not understand Foy to differentiate between the sufficiency of the evidence as it relates to the offense of armed robbery as opposed to the lesser included offenses of attempted armed robbery or simple robbery. The trial court instructed the jury as to each lesser included offense. In his brief, Foy simply argues that the record is constitutionally insufficient to convict him of the first robbery. Nor does the state contend that a lesser included offense conviction can be upheld even if one for armed robbery must be set aside
 We note the distinction because the principal Louisiana case that Foy cites in his opening and rebuttal briefs is State v. Smith, 450 So.2d 714, in which a defendant's conviction for armed robbery was reversed by the appellate court but, "since there [was] no question but that [the defendant] committed simple robbery," the case was remanded to the trial court for entry of a guilty judgment and resentencing on the lesser included offense of simple robbery. Id. at 716. The jury in the present case convicted Foy under the Louisiana law of principals. As we have noted, under Louisiana law a principal may be convicted of a higher or lower degree of a crime, depending on the mental element proved at trial. See West, 568 So.2d at 1022; see also Flowers v. Blackburn, 779 F.2d 1115, 1121 (5th Cir.) (habeas case), cert. denied, 475 U.S. 1132, 106 S.Ct. 1661, 90 L.Ed.2d 204 (1986). A defendant may therefore advance the argument that the evidence is insufficient to establish armed robbery, even if adequate to convict on a lesser included offense. See, e.g., Wells, 522 So.2d at 1165; Joseph, 463 So.2d at 1018. While Foy's relevant state habeas argument--and the state courts' rulings--treat his evidentiary challenge to the first robbery as plenary, Foy's federal district court habeas petition, inter alia, addresses specifically the elements for armed robbery as well as the Smith decision. We are nevertheless satisfied by our review of the state habeas proceedings and the record below, and by the state's failure to differentiate between degrees of culpability, that the question presented by the instant appeal is whether the evidence at the state trial is constitutionally sufficient to sustain a conviction for armed robbery or any lesser included offense.
 
 
 [12]
 In the district court, but not before us, the state also relied on the fact that the two robberies "occurred within minutes of each other."
 
 
 [13]
 Foy cites, for the contention that this error is reversible, our opinion in Cantu, 876 F.2d at 1138. Cantu, in turn, cites United States v. Vargas, 583 F.2d 380, 386-87 (7th Cir.1978). Both are direct appeals